## L. R. & Ft. S. Railway v. Holland.

1. RAILROADS: *Vigilance necessary for the protection of stock:*
Ordinary care in the management of their trains is the measure
of vigilance which the law exacts of railroad companies to avoid
injury to domestic animals; and this means, practically, that the
company's servants are to use all reasonable efforts to avoid
harming an animal after it is discovered, or might, by proper
watchfulness, be discovered, on or near the track.

APPEAL from *Conway* Circuit Court.

Hon. G. S. CUNNINGHAM, Special Judge.

*Clark & Williams* for appellant.

Touching the question of negligence, there is no evi-
dence whatever on the part of plaintiff. Everything was
done that could have been done to save the horse. No
power could have stopped the train after the horse got
on the track. *L. R. & F. S. R. v. Henson,* 30 *Ark.*

When there is no substantial evidence of what, in law,
is recognized as *culpable* negligence, the Court should
direct the jury to find for defendant, or arrest the verdict
by non-suit. See authorities cited in our briefs in former
cases.

SMITH, J. In this action for damages for killing a
horse, the pleadings admit the killing by the company's
train, but deny negligence. The case bears a striking
similarity to Harrison's case reported in 39 *Ark.*, 413. A
train of sixteen cars was running at night at a speed of
twenty miles an hour, on a grade which descended at the
rate of seventy-five feet to the mile. The engine had a
bright head light. An object as large as a man's body
could have been seen one hundred yards ahead on the
track, but not much was visible on the side.

There was a bridge, thirty-five feet long, across a small
stream. As the train reached one end of this bridge, a
horse ran out of the bushes and jumped upon the track

at the other end. The engineer saw the horse when he left the bushes and instantly whistled "down brakes," reversed his engine, sanded the track and the train began to slow down. There was not time to sound the alarm whistle, as only a second of time intervened before the horse was struck. No power—not even air brakes—could have stopped the train after the horse came upon the track, in time to save him.

The plaintiff relied upon the statutory presumption of negligence arising from the animal being found crippled near the railroad track. This presumption was effectually disproved by all the witnesses who had any personal knowledge of the circumstances, and their testimony tended strongly to show that the injury complained of was the result of inevitable accident. The verdict was thus left unsupported by any evidence. As the case must be sent back, we remark that there was a pretty plain failure properly to charge the jury. Under the state of proof detailed above, the Court denied the following requests of the defendant:

"2. The Court instructs the jury that evidence of witnesses not on the train, to the effect that they did not hear the whistle blow or the bell ring, is not evidence of negligence on the part of defendant's agents.

"4. If the jury believe from the evidence that the horse jumped on the track ahead of the train and so near the train that no efforts that could have been made and no diligence that could have been used, could have avoided the injury, then it was immaterial whether the whistle blew, or the bell was rung, and they will find for the defendant."

Railway companies are not insurers of the lives and safety of all the domestic animals in the country through

which their lines run. Ordinary care in the management of their trains is the measure of vigilance which the law exacts of them in their relations to the owners of such animals. And this means practically that the company's servants are to use all reasonable efforts to avoid harming the animal after it is discovered, or might by proper watchfulness have been discovered to be on or near the track.

Reversed.