## ATCHISON, T. & S. F. R. Co. *v.* WALTON.

Filed January 14, 1886.

RAILROAD COMPANY—INJURY TO ANIMALS — PRESUMPTION AS TO NEGLIGENCE— BURDEN OF PROOF.
    The mere fact of an animal being killed by a train raises no presumption of negligence upon the part of the railroad company or its servants, but the burden of proof is on the plaintiff to show negligence.

Error to district court, San Miguel county.
*H. L. Waldo* and *Frank Springer,* for plaintiff in error.
*Lea & Fort,* for defendant in error.
HENDERSON, J.   This is an action brought by the defendant in error in the county of San Miguel against the Atchison, Topeka & Santa Fe Railroad Company to recover damages for the alleged negligent striking and killing a mule by the railroad company's engine. The action is trespass on the case, in the usual form, founded on the alleged negligence of the servants of the company in running and operating its train of cars.   Plaintiff in error filed two pleas: one the general issue, the other setting up some special matter to avoid double damages under the statute.   Issue having been joined on these pleas, a jury was called and a trial had.   Judgment for the plaintiff below.   Motion for a new trial filed and overruled.   Bill of exceptions taken, and the cause brought here on error.

The errors assigned are as follows:

"(1) The court below erred in denying the motion of plaintiff in error for a new trial.   (2) The court below erred in giving judgment upon the verdict of the jury."

[1] Same case, *ante,* 282.

In order to determine the questions presented in the first assignment, it will be necessary to look into the instructions of the court and the evidence adduced on the hearing.

The instructions are as follows:

"And thereupon the court instructed the jury as follows: (1) This is an action to recover the value of a mule killed by the engine of the company. You are to consider this case exactly as if it were between private individuals. The engine had a right upon the track; the mule had no business there. If the engineer drove his engine at the usual rate of speed, and did not willfully or carelessly, or by negligence of his duties, kill the mule, then the railroad company is not liable for it. Unless you believe, therefore, from the evidence, that the engineer intentionally or negligently killed the mule, your verdict will be not guilty. If, on the other hand, you believe that the engineer could have avoided killing the mule, but, through a reckless disregard of the property of another, intentionally or negligently ran against the mule, and caused its death, you will find the defendant company guilty, and assess the damages at $250. (2) If the plaintiff allowed his mules to run loose within the city of Las Vegas in the night-time, in the neighborhood of the railroad, where trains were in the habit of passing, so that they could stray upon the track of the railroad, he assumed the risk of their loss or injury from accident, and was himself guilty of such negligence that he cannot recover for such loss, unless it was caused by the willful misconduct or gross negligence of the persons in charge of the engine. (3) If the jury believe, from the evidence, that the plaintiff's mule went upon the railroad track in the night-time, and was struck by a passing engine, and that the engineer could not see the mule in time to stop his engine and avoid the accident, the plaintiff cannot recover, and your verdict must be not guilty."

The facts in evidence, as shown by the bill of exceptions, are few, and no conflict in the proof worthy of consideration. The plaintiff below, on the day laid in the declaration, came to the town of Las Vegas with a wagon and team of mules, and went into camp for the night at a point near the railroad track, and within the limits of the town. The mules were turned loose to graze, and during the evening or night wandered some distance down the track of defendant's road, and, coming upon it, one of them was struck by a passing engine. The proof shows that the approach to the track from the side where the dead mule was found next morning was easy, there being no obstruction whatever. No witness on the part of plaintiff saw the act of killing. No evidence of any kind was offered proving or tending to prove negligence on the part of the defendant's servants or employes in charge of the train. The animal was killed some 12 to 18 feet north of the bridge over the Gallinas river, about one mile from the town. The engine seems to have struck the mule with considerable force, from the statements of the witness who saw the body next morning. It was, in substance, on this evidence the case went to the jury on the part of the plaintiff. The defendant introduced two witnesses. The first was Thomas Murphy, who testified as follows:

"What is your name? Thomas Murphy. Where do you live? Las Vegas. What is your business? Railroad engineer. In whose employ are you? The Atchison, Topeka & Santa Fe. Were you in the employ of the Atchison, Topeka & Santa Fe Railroad in July, 1884? I was. Do you remember the

occasion of the striking of the mule of Mr. Walton's as testified to here? I remember of striking a mule, but didn't know whose mule it was. What date was this? The fifteenth of July, 1884. At what place? At the south end of the Las Vegas yard. Just state to the jury all of the circumstances. What where you doing? Running an engine? Yes, sir. State to the jury all the circumstances connected with it. I was coming into Las Vegas on the fifteenth of July. It was in the night, about 2 o'clock in the morning, with a light engine; had no train, nothing but a light engine. We were coming in at the rate of about six miles an hour; got into the yard, and the mule came upon the left-hand side of the track, and I didn't see it until it was struck. I went on up to the switch, and went onto the siding, and made out a report the next morning about striking the mule. That's all there was about it. Well, what kind of a night was it, as to being light or dark? Very dark night. Could you see anything on either side of the track in front of you? Yes; I could see some on the right-hand side of the track. Why could you see on the right side? Because the boiler prevented me from seeing on the left side. As you approached the station, what kind of a lookout were you keeping? A very sharp lookout. How far ahead on the track could you see? I could see 150 feet. Where was this mule when you first saw him? I didn't see him until after I struck him. The first you saw of him was when the engine struck him? Yes, sir. On which side of the track did he go off? On the right; the east side of the track. If the mule had been standing on the track as you approached there, could you have seen him or not? Oh, yes; I could have seen him. When you speak of the right and left side of the track, which direction is it? The right side of the track is the east side coming into Las Vegas. That is the right side as you come in from the south? Yes, sir. After you saw that mule first, was it possible for you to stop your engine and avoid striking him? I didn't see him until he was struck. State whether or not it was possible for you to avoid striking the mule, from the knowledge you had of his being there. No, sir; I could not. If I had seen him at all, I could have stopped. Are there any switches near where the mule was hit? There is a switch near the lower end of the yard. Is that the switch you expected to go on the side track with? No; the switch where I expected to go onto the side track was 300 or 400 feet above that. Did you have any conversation with Mr. Walton, the plaintiff in this case, in regard to the striking of his mule? Nothing; only that he told me that a mule of his was killed, and he wanted to know if I knew who killed it, and I told him that I had struck a mule near the lower end of the yard. Did you, in that conversation, tell him the speed at which you were running? No; I don't know as I did. He asked me how fast I was running, and I told him five or six miles an hour, I think."

## Cross-examination by Mr. Fort:

"You say you were looking out for the station as you came in? Yes, sir. Could you see the lights, then, at the station? Yes, sir. Was there a switch for you to run in upon? Were you looking for a switch, or did you run in on the main track? Run in on the main track. Then your attention was directed to the light at the depot? Well, I was looking in front. Which side of the engine were you on? On the right-hand side. Was that a down grade or an up? About on a level. What rate were you running? About six miles an hour."

S. A. Hardy, being duly sworn, is examined by Mr. Springer on behalf of defendant, and testified as follows:

"Where do you live? Las Vegas. What is your business? Conductor. Were you a conductor in the employ of the Atchison, Topeka & Santa Fe Railroad in July, 1884? Yes, sir. Do you remember the occasion of the

:striking of the mule at the Las Vegas yard on the night of the fifteenth of July of that year. Yes, sir. What were you doing that night? I was sitting on the left-hand side of the engine. On the engine that struck the mule? Yes, sir. State to the jury the circumstances of that transaction. On the morning of the fifteenth of July, 1884, we entered the yards coming from the south. We struck a mule just after we crossed over the bridge going into the yards, and at the time I saw the mule he was evidently crossing over the track from the left. I just caught a glance of it. My attention was turned ahead. I was watching the switch lights to see that they were all set for the main line. That is about the circumstances connected with the killing. You say you were sitting on the left-hand side of the engine? Yes, sir, Were you looking out ahead on the track? Yes, sir. Well, how long before this mule was struck did you see him? Well, it was, to the best of my knowledge,—he wasn't ten feet from the engine, as I didn't have a chance to speak. · I just saw his hind parts. He seemed to be passing over the track from the left to the right. I should judge he was half way over the track before I saw him. If the mule had been standing on the track ahead of the engine, could you have seen it? Yes, sir. After you first discovered the mule, was it possible to stop the engine in time to prevent striking him? No, sir."

The defendant in error contends that although no evidence was offered to prove the fact of negligence by the servants of the defendant in charge of the engine, it is sufficient, *prima facie*, to show that the animal was killed by the defendant's engine, when the burden of proof shifts to that of the defendant to show that the killing did not occur through negligence or want of care. In support of this contention we are cited to the following authorities: 1 Add. Torts, § 586; *Stokes* v. *Saltonstall*, 13 Pet. 181; *Railroad Co.* v. *Pollard*, 22 Wall. 341; *McCoy* v. *California Pac. R. Co.*, 40 Cal. 534; *Piggot* v. *Eastern C. R. Co.*, 54 E. C. L. 233; *Danner* v. *South Carolina R. Co.*, 4 Rich. 329.

The case of *Stokes* v. *Saltonstall* was an action against the owner of a stage-coach, used for carrying passengers, for an injury sustained by one of the passengers by the upsetting of the coach, in which it was held that the owner was not liable unless the injury of which the plaintiff complained was occasioned by the negligence or want of proper skill or care in the driver of the carriage. But the facts that the carriage was upset and the party injured were *prima facie* evidence that there was carelessness, negligence, or want of skill on the part of the driver, and threw the burden of proof on the defendant to show that the accident was not occasioned by the carelessness or want of skill of the driver.

*Railroad Co.* v. *Pollard*, 22 Wall. 341, applied the rule announced in *Stokes* v. *Saltonstall*, *supra*, to that of an injury sustained by a passenger in a railroad car.

*McCoy* v. *California P. R. Co.*, 40 Cal. 534, was an action to recover damages for killing cattle by a railroad train. WALLACE, J., said:

"The line of the road was not fenced where it ran through the field occupied by the plaintiff. The live-stock of the latter, running in this field, strayed onto the road, and were killed by the train. These facts, unex-

plained, made a *prima facie* case of negligence against the defendant. The neglect of the defendant to build the fence certainly did not operate to dispossess the plaintiff of his entire field, or, what was the same thing, prevent him from making lawful use of it."

*Danner* v. *South Carolina R. Co.*, 4 Rich. 329, the leading case in that state, held that in an action against a railroad company, where the plaintiff proves that his cattle, pasturing on his own land, were killed by the company's train in its passage along the road, and the value of the cattle, he makes out a *prima facie* case of negligence which entitles him to recover, unless the company, by proof of the particular manner or circumstances under which the cattle were killed, rebut the presumption of negligence.

The text of Addison simply states the broad proposition, to the effect that "proof of the commission, by the defendant or his servants, of an injury of which the plaintiff complains, very generally carries with it *prima facie* proof of negligence, and it is for the defendant to show that the injury was the result of inevitable accident, or that it was occasioned by the negligence or misconduct of the plaintiff himself, or by circumstances over which he had no control." Add. Torts, § 586. The rule stated in this section is illustrated by the author by a reference to a variety of cases arising out of torts, but none like the one before us.

In several of the states, statutes have been enacted making the fact of killing or injuring *prima facie* evidence of negligence, and shifting to the defendant the burden of showing by positive evidence that due diligence and care were used to prevent the injury. In this territory no such statute exists. What is sufficient evidence to charge a railroad company with negligence for killing stock is a question upon which the courts are divided in opinion. In many cases it has been held that the simple fact of injury to the animals by the trains of the company, unaccompanied by anything which tends to show positive negligence or misconduct of the agents of the railroad, is insufficient to charge the company. This is the rule in those states where the company is not bound to fence its track, and where the stock is permitted to run at large upon uninclosed lands, without thereby subjecting the owner to liability as a trespasser. *Bethje* v. *Houston R. Co.*, 26 Tex. 604; *Pittsburgh, C. & St. L. R. Co.* v. *Mc-Millan*, 37 Ohio St. 554; S. C. 7 Amer. & Eng. R. Cas. 588; *Mc-Kissock* v. *St. Louis, K. C. & N. Ry. Co.*, 73 Mo. 456; *Mobile, etc., R. Co.* v. *Hudson*, 50 Miss. 572. The mere fact of killing or injury does not constitute any presumption of negligence. The specific negligent act complained of must be proved by the plaintiff. *Lyndsay* v. *Connecticut R. Co.*, 27 Vt. 643; *Chicago R. Co.* v. *Patchin*, 16 Ill. 198; *Great Western R. Co.* v. *Morthland*, 30 Ill. 451; *Schneir* v. *Chicago, etc., R. Co.*, 40 Iowa, 337; *Indianapolis, etc., R. Co.* v. *Means*, 14 Ind. 30; *New Orleans R. Co.* v. *Enochs*, 42 Miss. 603; *Mobile, etc., R. Co.* v. *Hudson*, 50 Miss. 572; *Grand Rapids R. Co.* v. *Judson*, 34 Mich.

507; *Brown* v. *Hannibal R. Co.*, 33 Mo. 309; *Scott* v. *Wilmington R. Co.*, 4 Jones, 432; *Walsh* v. *Virginia & T. R. Co.*, 8 Nev. 111; *Flattes* v. *Railroad Co.*, 35 Iowa, 191; *Kentucky R. Co.* v. *Talbot*, 78 Ky. 621; *Whittier* v. *Chicago, M. & St. P. R. Co.*, 26 Minn. 484; S. C. 5 N. W. Rep. 372; *Railroad Co.* v. *Henson*, 39 Ark. 413; *Railroad Co.* v. *Holland*, 40 Ark. 336.

We approve the rule stated in the cases above cited, and think it accords with the prevailing and general rule in common-law cases. No negligence was shown on the trial. There was no question of fact presented, under the issues joined in this case, for the decision and determination of the jury. The court gave three instructions, the first and second of which we disapprove as stating the law too strongly and favorably for the company; but, as no exceptions were saved, we do not consider them except for the purpose of determining to what extent the jury disregarded such as were correct.

We think the third instruction a correct statement of the law, but the jury disregarded it. The motion for a new trial presented that question to the court below. Did it err in refusing to grant it? We think so. Without some proof showing negligence, or some fact from which such negligence might be legally inferred, the cause ought not to have been submitted to the jury unless under proper instructions from the court.

Our conclusions on the first assignment of error render it needless to consider the second.

For the error of the court in refusing to set aside the verdict, the cause is reversed, and remanded, with instructions to grant a new trial, and for further proceedings therein according to law; and it is so ordered.

LONG, C. J., and BRINKER, J., concur.