RAILWAY COMPANY *v.* LEWIS.

Opinion delivered April 13, 1895.

1.  *Railway—Accident at crossing—Negligence.*

In an action against a railway company for personal injuries received in a collision between defendant's train and plaintiff's team at a highway crossing, where there was evidence that the accident was caused by the negligence of defendant's trainmen in unnecessarily blowing off steam and frightening the team, so that they ran away, an instruction, in substance, that defendant would not be liable if the engineer used proper efforts to stop the train was properly modified by adding, "unless you further find that the accident and injury were directly occasioned by the negligence of the engineer in blowing off his steam, and thereby carelessly causing the team to run away."

2.  *Negligence—Frightening team.*

A finding of the jury that an accident at a railroad crossing was caused by the negligence of defendant's engineer in unnecessarily blowing off steam, and thereby frightening plaintiff's team, will not be set aside as unsupported by evidence because no witness testified that the blowing off of steam was under the circumstances unnecessary and negligent, if the evidence was sufficient, in the light of common observation and experience, and in view of all the circumstances of the case, to justify such a finding.

3.  *Train approaching crossing—Negligence.*

It was not error to instruct the jury that if the team was frightened only at the statutory signals made in an ordinarily careful manner, and injury resulted, no liability attached; but that it was the duty of engineers in charge of trains approaching crossings, or when running near a public highway, to use ordinary care to discover travellers on such highway, and to so manage such trains as not to injure travellers negligently.

Appeal from Greene Circuit Court.

JAMES E. RIDDICK, Judge.

Action by Lewis against the St. Louis, Iron Mountain & Southern Railway Company to recover for personal injuries caused by the negligence of defendant's trainmen. The facts are stated in the opinion.

*Dodge & Johnson* for appellant.

1. The law of this case is well settled, both upon principle and authority. In the case of approaching a crossing, it is a violation of legal duty for the engineer of a train not to be vigilant in anticipation of a traveler at the crossing. The statute emphasizes this duty, under severe pains and penalties. But neither the common law, nor any statute, imposes such a duty with reference to the same traveller, when upon a highway merely in the vicinity of, or in close proximity to, a railroad track. It is only when the traveler upon the highway is, by reason of some unusual circumstance, placed in a predicament of peril, and the engineer shuts his eyes to such predicament, *and having it in his power* to avoid an apparently impending danger to which the traveller is exposed, and refuses to do so, that such refusal or failure can support a charge of negligence. The only class of cases where the engineer must turn his attention from the ordinary duties of running his engine, to guard against the danger which threatens a traveler upon the highway by reason of a frightened team, are cases where, the actions of the team being apparent to the engineer, the latter refuses, when he has opportunity to. do so, to stop the noise made by his train, in time to avoid injury to the traveller, whose safety is endangered by his frightened team. Such a case was 8 A. & E. R. Cas. 248. See also 58 Ia. 242; 51 Cal. 605; 69 Me. 208; 114 Mass. 350; 15 A. & E. R. Cas. 491; 140 Mass. 79; 37 A. & E. R. Cas. 484; 114 Mass. 351; 98 N. C. 247; 28 N. W. 464; 48 Ark. 370; 12 S. W. 953; 54 Ark. 431. No legal duty owed by defendant to the plaintiff was violated, whether the signal for the crossing was given or not. In so far as the noise caused by whistling for the crossing contributed to the fright of the team, it could not possibly constitute negligence, for it was in

the performance of a statutory duty, and the second whistling for brakes was in performance of the common law duty to do all that was possible to check the train, after discovering plaintiff's danger. As to the "unnecessary act" of escaping steam being negligence, see 57 N. W. 545-6.

2. The verdict is contrary to the evidence.

3. The court erred in its charge to the jury. See cases cited *supra*.

*W. F. Lewis*, pro se.

The court properly instructed the jury. 58 Ark. 454; 32 N. E. 209; 33 *id*. 451; 16 S. E. 81; 17 S. W. 375; 1 S. W. 107.

BOURLAND, Special Judge. This was a suit for personal injuries alleged to have been occasioned by the negligence of appellant's employees in charge of a running train. There was a verdict and judgment for $3000 in favor of Lewis, and the appellant seeks a reversal here on the following specifications of error made in its motion for a new trial: (1.) That the verdict is contrary to the law and evidence. (2.) That the court erred in giving to the jury instructions numbered 2, 3, 6, 7, 8 and 9, respectively. (3.) That the court erred in refusing prayers of appellant numbered 2, 3, 4, 5, 6 and 8, respectively. (4.) That the court erred in modifying, and giving as modified, prayer number 2 asked by appellant. (5.) That the verdict is excessive, and not sustained by the evidence.

The case of *Railway Company* v. *Roberts*, 56 Ark. 387, is the fruit of the same accident here in controversy; and, in that case, the proof, except as to the person injured, and as to the nature and extent of the injuries, was the same as in this case. Lewis, appellee, as the result of the catastrophe, was seriously shaken up and painfully jolted, which probably caused a separ-

ation of the fibres of the lower abdominal wall, allowing a portion of the intestines to protrude in such a manner as enabled a medical witness to classify the injury as reducible hernia.

Bound north and towards a crossing, Lewis and a companion, in a wagon drawn by a team of mules, were traveling upon a public highway, which, for about six hundred yards, ran on the west of, near, and parallel to appellant's railway. On the opposite side of the highway from the railway was a farm fence, extending some distance along and near the road, and north of the crossing. When the travellers had reached a point about 200 yards distant on the highway, there appeared, bound north, on the railway, "a fast freight" train, making about twenty-five or thirty miles an hour. The whistle was sounded for the depot, which is 640 yards south of the crossing, but the train did not stop or check its speed. Some 200 yards north of the depot, at or near "a whistling post," which was about 400 yards from the crossing, the whistle was again sounded, in four successive and rapid blasts, as a signal for the crossing, and thence continuously sounded until the crossing was reached. There was evidence that when the whistle was first sounded the train was about fifty yards south of the depot, at which sound appellee's team became frightened; that the train came on with whistle sounding, and emitting steam from the steam cocks on the side of the engine next to the highway; that the sound increased the fright of the team, which, in plain view of persons on the engine, had got beyond the control of the driver, and were running; that the whistling and emissions of steam from the steam cocks were continued until the crossing was reached. There was evidence that when the engine reached the "whistling post," the team was in plain view, frightened and running, and that they continued to run until they reached the cross-

ing, where, although appellee was endeavoring to avoid injury, the team rushed upon the crossing, where the engine struck the wagon, and appellee received his injuries. There was evidence, also, that, at about the time the engine reached the crossing, the whistle was sounded for brakes, the engine reversed, and the train brought to a standstill, some 200 or 300 yards north of the crossing, whilst there was verbal evidence that such a train could not be stopped in a distance less than 600 yards.

By instruction numbered 9, we think the measure of damages correctly given to the jury, and, from the evidence as to the nature of the injury and the resultant suffering, we are not prepared to say that the verdict is excessive.

In the case of *Railway Company* v. *Roberts, supra,* this court said : "Whether the injury complained of resulted from negligence upon the part of the defendant was, under the circumstances of the case, a question for the jury. The evidence is sufficient to sustain the verdict." The term "negligence" is relative, and its application depends upon the situation of the parties, and the degree of care and vigilance which the circumstances confronting them reasonably impose. Mr. Cooley, in his work on Torts, second edition, page 752, admirably defines "negligence." He there says that it is "the failure to observe, for the protection of the interest of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury."

Appellant's second, third and fourth assignments of error relate to instructions given and refused.

Instructions given and numbered 2, 3, 6, 7 and 8, respectively, are the same as instructions given in *Railway Company* v. *Roberts, supra,* numbered, respectively 2, 3, 10, 11 and 12 ; and there these instructions, if not all approved, were held not to be unfavorable to appel-

lant; and we think that other instructions asked by appellant and refused were covered by instructions given by the court.

1. Negligence
of railway at
crossing. Prayer No. 2 asked by appellant, but refused as asked, is as follows: "If the jury find from the evidence that the engineer of defendant's train was, at the time of the accident, on the lookout, and saw the plaintiff's team just before and as he started to cross the track, and immediately used every effort in his power to control and check his train, but failed because of the nearness of his train to the team, the court instructs you that there was no negligence on the part of the engineer, and you will find for the defendant on this point." The court, however, modified the prayer as follows: "Unless you further find that the accident and injury were directly occasioned by the negligence of the engineer in blowing off his steam, and thereby carelessly causing the team to run away;" and gave the instruction as so modified. The instruction as asked was not proper. It took away from the jury the question whether, under the facts presented, the engineer was negligent in blowing off steam, and, if so, whether such negligence was the proximate cause of appellee's injuries. The instruction, as modified and given, was correct. *Norton* v. *Eastern* R. *Co*. 113 Mass. 366; *Lamb* v. *Old Colony Railroad*, 140 Mass. 79; *Petersburg R. Co.* v. *Hite*, 81 Va. 767. *Lamb* v. *Ry. supra*, was a case where a horse was frightened, and injury resulted from the firing up of an engine at a particular place; and the court there said that "the act of firing up, like that of sounding a whistle or blowing off steam, is one necessarily incident to the running of trains, not continuous, but occasional, and so to some extent capable of being regulated in its use; and it may be negligence to do it in places where there are likely to be persons who may be endangered by it, and where its use can be avoided, as at stations

and at highway crossings and short portions of the railway near a highway."

Our statute, it is true, requires certain signals to be made upon the approach to a crossing, as a warning that persons may not come unawares into danger. This requirement of the statute ought not to be, and we think cannot be, held to be so inflexible as, under special circumstances, to contribute to or produce the injury which it is designed to prevent. It is the duty of the engineer to make these signals, and he may presume primarily that teams on near and parallel highways will not take fright at them, and that they will be heeded by persons approaching the crossings; but he must make the signal in a prudent and careful manner, out of regard for the public safety. If it be apparent that a team on such highway has become frightened at the sound of the signals, and is endangering the safety of an individual, the engineer should change, suspend or stop the sound of the signal, as the circumstances seem reasonably to require, until the team be passed or the danger averted; and if it then appear that, for any cause, a person at the crossing or approaching it on the highway is heedless of, or unable to escape, danger by collision, the engineer, if he can, by the ordinary means at his command, should check or stop his train, as prudence may require; and whether he exercised such ordinary care or prudence in this case was a question for the jury.

Counsel for appellant press another point upon our attention. It is insisted that there was no testimony by any witness that the blowing off of steam at the steam cocks was not, under the circumstances, necessary for the ordinary operation of the train. "It was not," say counsel in argument, "a question about which one witness had testified that it was unnecessary, and another had testified that it was not, and that, therefore, negligence cannot be imputed." If the jury are to be judges

2. Negligence in frightening team.

of the question as to whether there was negligence or a want of reasonable care and prudence, what will constitute the one or the other will depend upon the particular circumstances of each case. *Hahn* v. *Ry*. 51 Cal. 607 ; *McCully* v. *Clarke*, 80 Am. Dec. 584 ; 1 Thompson, Neg. 417 ; *Sawyer* v. *E. S. Co*. 74 Am. Dec. 463.

The place, the length and character of the train, its rate of speed, the view, whether plain or obscured, the fright of the team, its conduct and distance from the crossing, and the distance of the train from the team and the crossing, the purpose and use of steam cocks, the manner and facility of their manipulation, and all other circumstances, may be considered by the jury, in the light of common knowledge, experience and observation. There was evidence in this case to warrant the jury, in the light of common observation and experience touching steam machinery of the kind mentioned in the evidence, in saying, as they probably did, that the continuous blowing off of steam after the engine came into plain view of the frightened and running team was not necessary, but imprudent and careless. 1 Thomp. Neg. 351 ; *Brown* v. *Griffin*, 9 S. W. 546 ; *Davis* v. *Winslow*, 81 Am. Dec. 573.

3. When engineer negligent in approaching crossing.

The court gave an instruction favorable to the appellant, which was to the effect that if the team was frightened only at the statutory signals, made in an ordinarily careful manner, and injury resulted, no liability attached ; but that it was the duty of engineers in charge of trains approaching crossings, or when running near and alongside of a public highway, to use ordinary care to discover travelers on such highway, and to so manage such trains as not carelessly or negligently to injure such travelers. We think this is substantially correct. *Louisville etc. Ry*. v. *Stanger*, 32 N. E. 209 ; *Rosenberger* v. *Grand Trunk Ry. Co*., 15. A. & E. Ry. Cases, 448.

The engineer is not expected to neglect his other necessary and important duties. His position is one of great importance, his duties to passengers and property exacting, and great interests—life and property—depend upon their proper discharge; but persons on public highways running near and parallel to the railway and crossing the railway, while acting prudently and carefully themselves, have the right to expect ordinary care and prudence of the engineers operating these dangerous elements. *Hill* v. *Portland Ry.* 55 Me. 438; *Pittsburg etc. R. Co.* v. *Gilleland*, 56 Pa. St. 450.

On the whole, we see no error to the prejudice of appellant; and, as we cannot say from the testimony, that the verdict is excessive, the judgment of the lower court is affirmed.

Riddick, J., disqualified.

Bunn, C. J., (dissenting.) We dissent from the opinion of the majority of the court in this case, and think the judgment of the court below should be reversed, and, among others, for the following reasons:

The particular charge of negligence made by the plaintiff against the defendant's servants in charge of the locomotive, from which the injury is alleged to have been received by plaintiff, is that, by unnecessarily and negligently sounding the engine whistle, and permitting steam to escape from the cylinder cocks of the engine, they frightened plaintiff's mules, causing them to run away, and become unmanageable, and continued to add to their fright, so that they crossed the railroad track, and the rear wheel of the plaintiff's wagon was struck by the engine, throwing plaintiff back in his wagon, and injuring him so as to produce hernia.

Only two of plaintiff's witnesses testify as to the escaping of steam—the plaintiff and McGahey, at the

time head brakeman on the train—and these also testify as to the blowing of the whistle. The inference to be drawn from plaintiff's testimony on the subject is that the whistle was sounded, and the steam permitted to escape as aforesaid, almost continuously from a time soon after the engine had whistled for the crossing, at the whistling post, until the crossing was reached, and the collision took place. The testimony of McGahey was to the effect that the whistle was not sounded after the whistling post was passed until the engine had nearly reached the crossing, and that for the brakes (meaning as a signal to put on the brakes), and that the steam was let off about the same time, and that that was necessary in running the engine. Not a word of testimony was introduced to show that the letting off of the steam was an unnecessary or negligent act, but, on the contrary, McGahey testifies that it was a necessary thing to do in the management of the locomotive. Nor is the case any better as to the sounding of the whistle ; for McGahey says that was done to signal the brakemen to put on the brakes, and the signal was immediately responded to by himself and the others. The necessary meaning of this is that the putting on the brakes was for the purpose of decreasing its speed or stopping the train—a thing the engineer was in duty bound to do, in case of threatened danger, at the crossing. A lawful object must, in the absence of proof to the contrary, be attributable to the engineer, whether the sounding of the whistle and escaping of steam occurred soon after passing the whistling post, and continued, or whether it occurred just before the crossing was reached by the engine. There is absolutely nothing inconsistent between either of these acts and the duty of the trainmen, and yet, assuming that either or both of these acts were unnecessary and negligent, or, rather, that there was proof of either fact, when there was absolutely none,

the court gave its second instruction as follows, to-wit: "2.  For an injury resulting from the frightening of a team of horses by an engine and train of cars, while the same were being properly operated, no damages are recoverable, but where an engineer in charge of a locomotive, when about to pass a team of horses in full view, unnecessarily and negligently blows off steam, and by so doing frightens the team, and causes it to run away, the company is responsible for the consequences, but in all such cases it must appear that the injury was the direct result of negligence on the part of the employees of the company."

And the third instruction, which is substantially the same as the second.

Upon what principle the servants of the defendant could be said to be guilty of negligence, without some proof that the alleged acts were in fact negligently done— at least were not necessarily done—is incomprehensible to us; and what was there in the evidence to justify such instruction, we are unable to see.  The sounding of the whistle at the whistling post, for the crossing, was a statutory requirement, and nothing whatever appears in the testimony, that we can see, which would excuse a non-compliance with the requirement.

The following decisions fully show the duty and immunity of trainmen, in respect to the management of the engines and trains, as regards the rights of travelers on neighboring highways, to-wit: *Morgan* v. *Norfolk S. R. Co.* 98 N. C. 247; *Omaha & R. V. Ry. Co.* v. *Clarke*, 57 N. W. 545.

At this point, the doctrine that it is the duty of persons in charge of a locomotive engine to keep a lookout for travellers on a highway, located relatively to the railway as the one referred to in this case, announced in the sixth and seventh instructions given by the court below, has the effect of giving quite a radical change in

the conclusion otherwise necessarily to be found in considering the subject of special acts leading to the injury, which we have just disposed of.

It is impossible to discover from the testimony at what particular point plaintiff was when his team first took fright. He may have been 55 yards or 155 yards from the crossing, but between these points the testimony ranges. At this time, however, he testifies that the train was about 50 yards north of the station, (which we infer from the testimony of other witnesses, was 500 or 600 yards from the crossing), and, at the rate of speed at which the train was running, not quite one minute of time elapsed between this point and the crossing of the highway by the engine, and the collision. It is in proof that over this space the view between the plaintiff's wagon and the engine was unobstructed. The effect of the instruction then was to leave to the jury to determine whether or not the engineer, whose positive duty it was to keep a lookout for persons in the situation of the plaintiff at the time, at least as far back from the crossing as 500 or 600 yards, was negligent in not seeing plaintiff, and in not beginning his efforts then to decrease the speed and stop the train. The verdict in this case can have no other foundation than the theory of these instructions made applicable to the testimony. This brings us directly to a discussion of that theory.

The primary duty of the persons in charge of a locomotive is to keep a lookout on and along the railroad track, for the care and custody, the welfare and safety, of persons on the train is entrusted directly to them, and in most instances they are required to exercise the highest degree of care and watchfulness. The law cannot afford, nor can the courts afford, to release these trainmen from this—the strictest and highest of all duties—not even to insure the life of others in a different situation from that of passengers on the train. As for trav-

ellers on the highway, they become the objects of the special care of the engineer only when on ground on which they both have equal rights and privileges—the crossing—when reciprocal duties are imposed upon the engineer and the traveler, with respect to each other, and those committed to their care.  To look out and keep an eye on the track is also to keep an eye on the crossing, when that comes into view.  The natural range of the vision extends over a space wider than the track. Within this range objects are seen by keeping the lookout, and these objects are those referred to as being near or approaching the crossing.  The duty to observe these objects off of the track and near to it cannot and must not interfere with the engineer's constant observance on the railroad track, for that is his primary duty.

From this it will be inferred that the argument is that a look out on the neighboring and parallel highway, at a point indefinitely distant from the crossing, is not among the things required of the engineer.  If it is shown that he has observed the traveller anywhere and in danger, he should do all in his power, as a reasonable person, to prevent injury.  But the point is that he is not required to see and observe the condition of the traveller, when that seeing and observing will take his eye from the point he is required to look to continuously.  This idea is illustrated in the policy of our legislation.  Thus, until recently, the common law rule prevailed in this State as to the duty and non-duty of trainmen with reference to trespassers on the track. The common law rule was that trainmen owed no duty to trespassers except after observing them, and then to do all they could to prevent injury to them.  There is no common law duty to keep a lookout for such.  In 1893 the legislature, by an act, imposed the additional duty of keeping a lookout for such persons, but expressly confined the lookout to the railway track.  No legis-

lature has probably ever gone so far as to compel train-men to lose sight of the track for a moment, as would be the case if the doctrine of the majority of the court shall prevail.

In support of the opposite theory to the one here contended for, the case of *Lamb* v. *Old Colony Railroad*, 140 Mass. 79, is cited. A careful reading of the opinion in that case will, we think, give it exactly the opposite effect to that intended in the citation, as will appear from the following quotation from it, viz.: "The defendant had a right to run its trains on its railroad adjoining the highway, and was not responsible to travellers on the highway for the consequences of noise, vibration, or smoke caused by the prudent running of its trains. The smoke which frightened the plaintiff's horse was occasioned by 'firing up' the engine—that is, mending the fire, or adding coal to it—the ordinary effect of which is to occasion the emission, for a short time, of very black, dense smoke from the smoke stack. The plaintiff contended that there was evidence that it was practicable to run the train for the whole distance where the railroad joined the highway without firing up; and that the act of firing up on the stretch of railroad adjoining the highway was unnecessary for the ordinary running of trains, and exposed travellers to an unnecessary danger, and was therefore negligent, or might be found to be so by a jury. Without considering the proposition of law involved, we think the court below might properly have ruled that there was no evidence to sustain the proposition of fact." And, further on, the court say in that case: "There was no evidence that the defendant's servants knew that the plaintiff was on the highway, but there was evidence that they would have seen him if they had been on the lookout for travellers on that part of the highway. If it was their duty to be on the watch for persons on the highway, and to avoid fir-

ing up when near them, there was evidence of negligence. The act of firing up, like that of sounding the whistle or blowing off steam, is one necessarily incident to the running of trains, not continuous, but occasional, and so to some extent capable of being regulated in its use; and it may be negligent to do it in places where there are likely to be persons who may be endangered by it, and when its use can be avoided, as at stations and highway crossings and in short portions of the railroad near a highway."

In other words when these acts can or may be dispensed with for the time being, and they might have a tendency to produce or aggravate danger, they should be dispensed with; but does this show that, when the highest duty of the engineer is to check or stop his train, and sounding the whistle and letting off steam are the only known instrumentalities of accomplishing such an act, as in the case at bar, such sounding of the whistle or blowing off steam can or should be avoided. The very statement is a refutation of the truth of such a proposition. The court in concluding its argument in that case says: "Being under no obligation to watch for travellers on the highway, the defendant could not have been guilty of negligence in not seeing and avoiding the plaintiff."

The doctrine announced in *Favor* v. *B. & L. R. Co.*, 114 Mass. 350, is that a railroad company, in approaching crossings with its trains, are to take other reasonable precautions than those required by statute. There is no evidence in this case of the neglect of any reasonable precaution whatever, unless it be involved in the lookout at an indefinite distance from the crossing.

We do not think that on careful reading the case of *Norton* v. *Eastern R. Co.* 113 Mass. 366, cited in

the opinion, militates against our theory of this case, but rather sustains it; and so in the case of *Petersburg R. Co.* v. *Hite*, 81 Va. 767, the question being whether the noise made by the train was *needlessly* or *negligently* made, as it announces no doctrine that is at all controverted, furnishes no authority for the case at bar, for it determines nothing that is not already admitted by every one.

We are unable to find a well considered case, wherein the particular question is involved, where, without statutory provisions, the persons running a railroad train are burdened with the absolute duty of keeping a lookout for travellers on the highway, except such as are crossing, or about to cross, or are nearly approaching the crossing of the railway and the highway; and where this is on grade; and this we think we have sufficiently explained above.

Both the engineer and fireman in charge of the running of the train in this case are dead, and were dead before the trial. They are not here to tell their story. Previous to the time the mules first became frightened, according to the plaintiff's testimony, that is, when the train was fifty yards north of the station, there could of course be no call upon them to look out, for, if they had, nothing would have appeared to justify a change in the running of the train. It is uncertain at what point the signal for brakes was given, or the steam let off. These were after the signal for the crossing had been given, as the law requires. The sounding of the signal for brakes and the letting off of steam could have had but one object—a decrease in the speed of the train, and perhaps its stoppage, if possible. This was not only a lawful object, but was of the highest necessity if the trainmen had observed the condition of plaintiff, and were endeavoring to stop the train to avoid injury to

him. In the absence of all evidence to the contrary, this motive must be attributed to them. But the instruction of the court imposed unusual, and, to our minds, unauthorized burden upon them.

Wood, J., concurred in the dissenting opinion.