ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY *v*. GRANT.

Opinion delivered February 22, 1932.

*E. T. Miller, E. L. Westbrooke, Jr.,* and *E. L. Westbrooke,* for appellant.

*J. G. Waskom,* for appellee.

BUTLER, J.   This is an appeal from a verdict and judgment in favor of the plaintiffs, in the two cases which were consolidated for the purpose of trial.   The damage for which appellees sued was for the killing of a number of mules belonging to them caused by the operation of appellant's train.

The occurrence out of which comes this litigation happened about eight o'clock P. M. on the 23d of August, 1930, on a straight stretch of appellant's line of railway a short distance south of where the railway crossed the floodway of Drainage District No. 7 in Poinsett County, Arkansas, and not near or at a crossing.   The track at this point ran from north to south on a long bridge or trestle and across the floodway, which was from a half to a mile wide.   To the south of the floodway and nearby

was an inclosure in which about 100 head of mules were accustomed to pasture. On the date aforesaid a number of these mules had got out, and were grazing on the dump and tracks of the railway. The country through which the railway ran at this point was low, and the dump was elevated about fifteen or twenty feet above the level of the surrounding land. The southbound passenger train of the appellant passed over the floodway, and a short distance beyond ran into and killed ten mules, the property of the appellees, and about half a mile further south killed another mule, not involved in this suit, belonging to some other person. At the time of this happening the country was experiencing a severe and protracted drouth, and, while the land in that vicinity was naturally low and swampy, it was very dry at this time, and there was no water about except a small quantity in the two canals which were cut down the floodway. The mules were killed on Friday, and their loss was not discovered by the appellees until a day or two afterward, when evidence of where they had been killed was found. The mules had been buried by the side of the track, and they were dug up for purposes of identification. An examination was made along the line of railroad from this point back toward the floodway, and it was found that south of the floodway a short but undetermined distance the tracks of the mules were seen, and from the distance between these tracks and the nature of the same it was concluded that they had started running south down the railroad, and had gone in this manner a distance of approximately 200 yards before reaching the place where they were killed. All of these facts are undisputed.

The engineer and fireman in charge of the appellant's train, while admitting that their train killed the mules, testified that it was impossible to avoid the injury, because, as the train approached the floodway from the north, a dense cloud hung over it which proved to be

about 100 to 200 feet through, and so dense that the headlight of the locomotive would not penetrate a sufficient distance ahead to give a view of an object on the track in time to stop the train or to slacken its speed in order to avoid injury; that their train was traveling at the rate of fifty miles per hour, and they entered the cloud without slackening speed, and, as they passed through, they discovered the mules on the track but they were then so close that they could not avoid running upon them. They were unable to say of what the cloud was composed—whether smoke or fog—but the engineer stated that he thought it was a little of both. Both the engineer and the fireman testified that they were keeping a constant lookout ahead, but did not say that they gave any signals when they entered, or passed through the zone of cloud, or when they saw the mules as they emerged from it. The engineer also testified that he had observed fog and smoke several times before on that part of his run, but was unable to recall having seen it at this particular point before.

There was testimony introduced on behalf of the appellees tending to show that there had been no smoke recently in that vicinity, and no indications of recent fires in the woods.

Basing their contentions on the testimony of the fireman and engineer, counsel for the appellant insist that the instructions given by the court were abstract and did not present the issues in the case, and that the modification made by the court to instruction No. 4 requested by the appellant and the giving of that instruction as modified was error. They chiefly contend that there should have been a directed verdict in favor of the appellant as requested, because, as they say, the undisputed evidence affirmatively shows that the killing of the mules was an unavoidable casualty, and that the presumption of negligence raised by the admission that the mules were killed by the operation of appellant's train was overcome by the testimony of the engineer and fireman,

which was undisputed, and which established due care in the operation of the train. Upon the last contention depends the question of the correctness or error of the instructions as those given do not depart from the principles applicable, where the statutory presumption of negligence is not overcome by direct testimony probable in itself and not in conflict with other circumstances in testimony.

While freely conceding that, where injury is shown to have been caused by the operation of its train, a *prima facie* case of negligence is established which casts upon its owner the burden of proving by a preponderance of the evidence that it was free from negligence, appellant insists that, as no one saw the accident but the engineer and the fireman, their conclusion that the injury was unavoidable and the facts testified to by them must be accepted, the presumption of negligence is at an end, and the burden of showing that there was no negligence in the operation of the train is discharged.

This contention cannot be sustained. The rule that the testimony of operatives in charge of a train may not be arbitrarily disregarded by the jury does not impose upon it the duty of accepting a statement of fact as true merely because so testified. For the jury to be bound to accept such evidence as true, it must be consistent with the other testimony in the case, reasonable in its nature, and uncontradicted in its essential points. *St. L. I. M. & S. R. Co.* v. *Landers*, 67 Ark. 514, 55 S. W. 940; *St. L.-S. F. R. Co.* v. *Minor*, 85 Ark. 121, 107 S. W. 171; *K. C. So. Ry. Co.* v. *Simmons*, 140 Ark. 80, 215 S. W. 167.

It is elementary that it is the province of the jury to pass upon the credibility of the witnesses and to determine the weight to be given their testimony. In doing this it is the duty of the jurors to consider the testimony of a witness in the light of all the evidence, whether direct or circumstantial, and to apply to any statement made their common sense and experience. *Railway Co.* v. *Lewis*, 60 Ark. 409, 30 S. W. 765, 1135. The engineer

stated that the cloud covered the track for a distance of from 100 to 200 feet, and that it was over the floodway. It is also in testimony that the mules were south of this floodway, and their tracks showed that they were running, and that they had run for perhaps 200 yards south. It is reasonable, therefore, to conclude that, if the zone of cloud existed, the mules were never within it, and injury to them might have been prevented by the exercise of ordinary care. Then, too, the jury had before it testimony as to the climatic conditions then prevailing, and that the woods had not been on fire for some time before the date of the accident, and that no one had observed any smoke in that vicinity at or about that time. It was therefore not unreasonable for the jury to infer that no fog or cloud smoke existed, as no conditions prevailed from which the cloud might be expected to have been formed, and that the killing of the animals was the result of the failure to keep the lookout required by the statute. *K. C. Sou. Ry. Co.* v. *McCrossen,* 140 Ark. 68, 215 S. W. 161.

There was further evidence showing that another mule was killed a considerable distance further south, and that the speed of the train was not slackened nor any signal given upon entering the cloud, nor any testimony as to any effort made by signal or otherwise to avoid the injury to the animals; the engineer and fireman merely contenting themselves with the statement that, when the mules were first seen, the train was so near that it was impossible to keep from striking them.

When all the evidence is considered, we are of the opinion that it was sufficient to fix liability on the appellant. Counsel call our attention to the statement made in 52 C. J. at page 23, to the effect that a number of courts hold that a railroad is liable only for gross and wanton or wilful negligence where the operation of its train causes an injury to animals trespassing upon its tracks and that other courts hold that liability attaches only for injuries recklessly, wantonly, wilfully or intention-

ally inflicted. This has never been the law in this State. Under our statutes and decisions a railroad company owes the duty to the owner of animals straying upon its tracks to use ordinary or reasonable care to avoid injuring them, after they are discovered or might by ordinary care have been discovered by keeping the proper lookout. Section 8568, Crawford & Moses' Digest; *L. R. & Ft. S. Ry.* v. *Holland,* 40 Ark. 336.

Instruction No. 4 requested by the appellant limited the duty of the railway company to take precautions to avoid injury to animals after their peril was discovered. The modification extended that duty to the peril which could have been discovered by the exercise of ordinary care. The instruction as modified was a more correct statement of the law than as requested, and there was no error in the modification.

Since there was substantial testimony warranting the submission of the case of the jury, the instructions given by the court were not abstract, as contended by counsel, and were a fair statement of the principles applicable to the testimony. The record presents no reversible error, and the judgment of the trial court is affirmed.