COCA-COLA BOTTLING COMPANY OF BLYTHEVILLE *v.* DOUD.

4-3578

Opinion delivered November 12, 1934.

*Bruce Ivy* and *Cecil Shane,* for appellants.

*Luther H. Graves* and *Harrison, Smith & Taylor,* for appellees.

BUTLER, J. The scene of the occurrence out of which this litigation grows is a village called Joiner, populated by three hundred and six persons, which straggles on either side of Highway No. 61 and a railway. Running at an angle across this highway is a gravel road, and at the intersection there is a large triangular space approximately 100 feet at its widest point. The highway runs through the village from northeast to southwest.

At about 3:30 o'clock on the afternoon of April 28, 1933, an automobile, driven by Miss Ruth Albrecht in which Mrs. Helena A. Doud was riding as a guest, in passing a truck operated by an employee of the Coca-Cola Bottling Company, was overturned. Both ladies were very seriously injured. To recover damages for these injuries, each brought suit against the company

on the theory that the negligent operation of the truck by its driver, Hendrix, was the proximate cause of the accident and the resulting injuries. William P. Doud and O. F. Albrecht also brought separate suits against the company, the first named to recover for doctor's bills and other expenses incurred by him in the treatment of Mrs. Doud, his wife, and the other for expenses incurred in the treatment of Miss Albrecht, his daughter.

The suits were defended on the theory that the accident occurred at the intersection of streets in the business district of the town which Hendrix, driving the truck of the company, was in, having entered the same in a prudent manner giving the proper signals and driving with due caution with regard to the traffic and use of the way; that the accident was the result of the negligence of the driver of the automobile; that it was being driven recklessly in the business district at an excessive rate of speed, rendering the driver unable to keep the car under control. The further defense was interposed that, if the driver of the truck was negligent, the driver of the automobile was also negligent by reason of her rapid and careless driving, and that her guest, Mrs. Doud, by acquiescing in the manner of such driving, was also guilty of negligence; that the negligence of the driver of the automobile and her guest directly contributed to the happening of their injuries.

The cases were consolidated for the purposes of trial, which trial resulted in a verdict and judgment in favor of each of the plaintiffs. On appeal no exceptions are taken as to the amount of the judgments.

It is first contended that the trial court erred in refusing to direct a verdict on the motion of the defendants, the contention being that the evidence failed to establish the negligence of the driver of the truck, and that, under the facts and circumstances proved, the casualty to the automobile was occasioned solely by the reckless driving of the same and the inattention of its occupants.

There is some conflict in the evidence relative to the movement of the truck immediately preceding the accident and a sharp and decided conflict in the evidence rela-

tive to the speed at which the automobile was being driven and the attention of its driver to the conditions of the road ahead.

On the west side of the highway north of the intersection where the gravel road crosses at an angle is a store occupied by Squire Holt. It was in front of this store slightly to the south on the east side of the highway that the automobile overturned. Just before the automobile appeared, being driven from the northeast to the southwest, the truck of the appellant company was parked parallel with the highway in a space between the west curb of the highway and the front of Holt's store, approximately in front of the middle door of the store. It appears that the truck was headed toward the south when parked. Hendrix testified that, when he started to leave Mr. Holt's place of business, he passed around the south end and in front of the truck, speaking to some persons as he did so; that he entered the truck from the side next to the highway; that he looked in each direction and saw no one approaching; that as he put his truck in movement he signaled with his left arm his intention to turn into the highway; that about the time he got the truck moving he heard a horn and stopped instantly; that he then observed Miss Albrecht's car about thirty or forty feet to the north going off the pavement so fast as to apparently be from under control. Witness stated that where the movement of his truck was being made was a very dangerous place, with which he was familiar; that the front of his truck at the time the Albrecht car was overturned was at about the center of the highway and that the automobile missed him about fifteen feet.

Hendrix's testimony was corroborated by that of some witnesses regarding the rate of speed at which Miss Albrecht's car was being driven, the estimated speed being from forty-five to fifty miles per hour.

The testimony of witnesses for the appellees tended to show that Miss Albrecht and Mrs. Doud were traveling at a moderate rate of speed entering the village from the north. Miss Albrecht stated that, before reaching the village, she was traveling at about forty miles an hour,

but slowed down on reaching it. She was corroborated by witnesses who stated that she was traveling at from thirty to thirty-five miles an hour after entering the village and that she slowed down as she approached Holt's store. The testimony further tends to show that, as Miss Albrecht was proceeding in this manner, the driver of the truck without warning made a sudden left turn directly into the highway and directly in front of the approaching automobile, which was sounding its horn.

In describing the situation thus presented, Miss Albrecht said: "As I approached the truck, I gave him a signal that I was going to pass. He turned out the least bit, and as I got closer to him he started to shoot out straight across the highway. At that point I realized that I was too close to apply my brakes. I have done a great deal of driving, and I saw the only chance I had was to turn in front of him, which I did, and he came right straight through and hit us. The collision made me lose control. We started to roll, and that is all I remember."

There was testimony corroborating Miss Albrecht's statement to the effect that right after the occurrence Hendrix, the driver of the truck, stated that he guessed he was at fault because he pulled out on the highway in front of them, and also testimony tending to show he was engaged in conversation with his friends as he entered the car, "gabbing" as one expressed. On this testimony the trial court submitted to the jury the question of the negligence of the truck driver in the manner of the movement of his vehicle and also the question of the contributory negligence of Miss Albrecht and her guest, Mrs. Doud. We think the testimony abundantly justifies the submission of those questions to the jury. The court properly refused to instruct a verdict in favor of the defendants.

Exceptions were saved to the giving of instructions Nos. 1 and 2 for the plaintiff. These are identical instructions with the exception that No. 1 submits to the jury the question, in Mrs. Doud's case, as to whether or not Hendrix drove the truck in question upon the highway in front of the oncoming car, and, if so, whether or

not it was negligence, and, if so, whether this caused or contributed to Mrs. Doud's injury. Instruction No. 2 presented the same question as it related to the case of Miss Albrecht. One of the objections urged was that if the jury should find the facts in the affirmative, that such were negligence and the proximate cause of the injuries, "then your verdict will be for the plaintiffs." The contention is that the expression, "then your verdict will be for the plaintiffs," offends against the rule stated in *Temple Cotton Oil Co.* v. *Skinner*, 176 Ark. 17, 2 S. W. (2d) 676, and other cases cited, which is that an instruction ending with the stereotyped "find for the plaintiff" is incomplete in that it ignores and leaves out the question of the defense of contributory negligence. These instructions, however, do not so conclude, but end with the phrase, "unless you should find for the defendants under other instructions given you." This, with the further instruction given by the court: "You are not to take any one instruction given you as the whole law of the case, but take them all together as such," differentiates these instructions from those criticized in the cases cited by the appellants.

It also appears that the appellants made a specific objection to these instructions "for the reason the jury might be misled into thinking that if he drove out there under any condition with a car coming from the north he would be guilty of negligence." This specific objection waived other specific grounds of objection. *St. L., I. M. & S. R. Co.* v. *Williams*, 105 Ark. 331, 151 S. W. 243; *Ark. & La. Ry. Co.* v. *Graves*, 96 Ark. 638, 132 S. W. 992; *Mo. Pac. Ry. Co.* v. *Barry*, 172 Ark. 729, 290 S. W. 942.

Instruction No. 3 submitted the question of ordinary care of one suddenly confronted with an emergency created through the negligence of another, and instructed the jury that, if such person so situated makes a choice of a course of conduct to avoid the danger such as one of ordinary prudence, under similar conditions, might reasonably make, then there would be no negligence, even though it might subsequently appear that it would have been wiser to have chosen some other course of conduct.

It is urged that the giving of this instruction was error, because of the expression "although it may now appear that it would have been wiser for her to have chosen some other course," and other expressions of like character. We are of the opinion that the instruction correctly states the law. The general rule is stated in 42 C. J., page 890, as follows:

"Where the operator of a motor vehicle is by a sudden emergency placed in a position of imminent peril to himself or to another, without sufficient time in which to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as is required of him under ordinary circumstances, and is not liable for injuries caused by his machine or precluded from recovering for injuries to himself or his machine if an accident occurs, even though a course of action other than that which he pursues might be more judicious, provided he exercises ordinary care in the stress of circumstances to avoid an accident." This is also, in effect, the rule announced in our own cases, one of the more recent being *Ark. Gen. Utilities Co.* v. *Oglesby,* 188 Ark. 564-6, 67 S. W. (2d) 180.

There were a number of instructions requested by the defendants which the court refused, which action of the court, it is argued, was error. We do not set out these instructions because to do so would unduly extend this opinion. It is sufficient to say that they were all based on the theory that at the time of the accident the driver of the truck was in, or entering, the intersection of Highway No. 61 with the gravel road which crossed it at an angle; that therefore he had the right of way and was not guilty of negligence in the movement of his truck. This theory is not supported by the evidence in the case. The plats of the locality and the measurements made by appellants' own witnesses show that the points on the highway entered by the truck on leaving Holt's store was not in, or at, the intersection of the highway with the gravel road, but was approximately one hundred feet to the north. Consequently, Miss Albrecht's car, at the time the truck turned on to the highway, was a still further distance to the north. The truck, instead

of turning into the intersection turned directly across Highway No. 61 north of the intersection and across that part of the highway along which Miss Albrecht's car was properly proceeding.

Instruction No. 8, requested by the defendants, told the jury that if, at the time the truck movement was made, its driver made the proper signal of the intended movement, which the driver of the automobile saw or which she could have seen had she been in the exercise of ordinary care in time to slow down or stop the automobile and thus avoid the injuries, she was bound to take notice of the signal and bring her car under control accordingly.

Instruction No. 9, requested by the defendants, instructed the jury as to the duty of a person operating an automobile upon a public highway, and that this duty required that the automobile be driven with due care at a prudent speed not greater than reasonable and proper, having due regard to the traffic and safety of others, and that the driver had no right to travel at a speed or in a manner as would endanger other persons or their property lawfully upon the highway.

The court gave these instructions except the concluding sentence of each. The sentence excluded from instruction No. 8 is: "And you are further instructed that it was her duty at the time to be driving the car at such reasonable speed and with such reasonable care that she could bring it under control." This sentence does not correctly state the true rule as to the control of a car by its driver, even though the driver was in, or entering, a highway intersection. The true rule is that the driver must have his car under such reasonable control as would enable him to avoid accidents which might be foreseen by the exercise of ordinary care.

Another objection which justified the court in striking these sentences from the two instructions is that they were grounded on the erroneous assumption that the injuries occurred at the intersection of highways which the truck driver was entering in a careful manner before the automobile had arrived at this intersection. Appellant calls attention to a number of our cases in which

the language is identical with the last sentence of instruction No. 9 excluded by the court in this case. This is true. In *Smith-Arkansas Traveler Co.* v. *Simmons,* 181 Ark. 1024, 28 S. W. (2d) 1052, the identical language was in fact, approved by the court and reference was made to the approval of the same statement by the court in *Madding* v. *State,* 118 Ark. 506, 177 S. W. 410. The statement of law was correct as applied to the facts in those cases, both of which involved a question of liability for injury caused by the movement of automobiles approaching street crossings in cities. The reason for the rule was thus stated in the Smith case, *supra:* "Danger may always be expected or anticipated at street crossings or at intersections of streets, and every driver of an automobile should keep a lookout and approach same with his machine under control, else he can not be regarded or treated as exercising ordinary care."

In support of appellants' contention, a number of other cases of our court are cited, approving declarations similar to the one stricken from instruction No. 9, but all of these relate to the liability resulting from the movement of automobiles at street crossings in cities and the duty of the driver at such places, or when turning a corner; whereas, in the case at bar, as we have seen, the movement of the truck was not at a street crossing. It is apparent that ordinary care in one situation would be the grossest negligence in another and different situation. *Railway Co.* v. *Lewis,* 60 Ark. 409-13, 30 S. W. 765, 1135; *Railway Co.* v. *Triplett,* 54 Ark. 300, 15 S. W. 881, 16 S. W. 266. In a small village at a point on a highway one hundred or more feet distant from the intersection of that highway with another, the degree of care to be exercised and the rate of speed permissible is quite different from the care required and the proper rate of speed to be maintained in crowded cities at street crossings. It is not to be supposed that a driver of an automobile is required to drive at a rate of speed at all times as would enable him to stop immediately at any given time. If such were the rule, it would nullify that part of our statute making it lawful to travel at thirty-five miles an hour except in business districts at the

intersection of highways when the driver's view is obstructed and in turning corners; and also the further rule that a vehicle on a highway shall be driven at "a careful and prudent speed, not greater than is reasonable and proper having regard to the traffic, surface and width of the highway, and of any other conditions then existing."

Instruction No. 11 contained a part of our statutes relating to the manner in which automotive vehicles may be driven. The first subdivision of the statute given stated the rule quoted, *supra*. The remainder stated the different rates of speed, *prima facie* lawful, when approaching and traversing intersection of highways when the driver's view is obstructed, prescribes the circumstances under which the driver's view shall be deemed to be obstructed, prescribes certain rates of speed in a business district, the rate of speed permissible under all other conditions, and, in the concluding portion defines "business districts." Following the language of the statute, an application was sought to be made of its several provisions to the evidence in the case. The court refused to make the application requested, and correctly so. Much of the statute which the court gave at the request of the defendants has no application to the facts of the case at bar. As we have seen, the case did not involve an approach within fifty feet and a traverse of the intersection of the highways when the view of the driver is obstructed. There was no proof offered that the scene of the casualty was a business district within the meaning of the act. The court instructed the jury on the applicable portion of the statute in an instruction as favorable to the appellants as they were entitled to. That instruction is as follows: "If you find that the driver of the automobile was violating any of the rules with reference to the use of the road as set out above, then you are told that such violation would be evidence of negligence, and you will determine from all the facts and circumstances introduced in evidence in this case whether in doing so she was guilty of negligence that caused, or contributed to, the injury, and if you find that

she was guilty of such negligence, then she and her father cannot recover.

"It shall be *prima facie* unlawful for any person to exceed any of the foregoing speed limitations."

Instruction No. 10 requested by the defendants and modified and given by the court as modified, was an instruction on the duty of Mrs. Doud, the invited guest of Miss Albrecht, to exercise ordinary care to protect herself from injury and gave to the jury a guide for the determination of whether her conduct just prior to the injury she sustained contributed to it. The modification consisted in striking from this instruction a provision that it was the duty of the guest in the exercise of ordinary care "to caution the driver of any danger, to keep a lookout for her own safety, to protest against any reckless, unlawful or dangerous driving." The court, at defendant's request, gave instruction No. 12 covering the paragraph stricken from instruction No. 10. In that instruction, after telling the jury that, if it should find that the driver of the car was guilty of contributory negligence which proximately contributed to the injury, it was further told if it should find that Mrs. Doud failed to exercise ordinary care for her own safety "by acquiescing in the negligent manner of driving or failing to protest against same, provided she had time to do so acting as a reasonably prudent person, and that such acquiescence or failure to protest contributed to her injury, then she cannot recover." We do not intend to be understood as approving the language of instruction No. 12, but quote it only for the purpose of showing that instruction No. 10 was covered by it and the modification complained of was not prejudicial.

On the whole case it appears to us that the issues were presented to the jury under instructions about which the appellants have no cause to complain, and that the testimony warranted the verdict of the jury. The judgment is therefore affirmed.