Mo. Pac. Trans. Co. *v*. Miller.

5-1142

299 S. W. 2d 41

Opinion delivered February 11, 1957.

[Rehearing denied March 11, 1957.]

*Cracraft & Cracraft* and *Barber, Henry & Thurman,* for appellant.

*McMath, Leatherman & Woods* and *John L. Anderson,* for appellee.

SAM ROBINSON, Associate Justice. The appellant, Missouri Pacific Transportation Company, appeals from a judgment in the sum of $100,000 awarded V. W. Miller for personal injuries sustained by Miller while a passenger on one of appellant's busses; appellant also appeals from a judgment in the sum of $25,000 in favor of appellee, Mrs. V. W. Miller, for the loss of consortium. Judgment in like amounts were also returned against Rube Oxner, the other party involved in the collision, but he has not appealed.

The first question to be considered is whether there is any substantial evidence of negligence on the part of the bus driver. On November 16, 1955, at about 8:00 P. M., appellant's bus, while being driven by its employee, Thomas M. Hopkins, was traveling in a southerly direction between Marianna and Helena, Arkansas. The bus collided with a truck operated by Oxner. Appellee, V. W. Miller, was a passenger on the bus. He alleges the collision was due to negligence on the part of both Hopkins and Oxner, and that he received injuries as a result of the collision which render him permanently and totally disabled. It is appellant's contention that there is no substantial evidence of negligence on the part of its driver that would carry the case to the jury; that the collision was due entirely to the negligence of Oxner; that Oxner was drunk and, while driving his truck in a northerly direction, meeting the bus, suddenly, without warning, cut across the highway in front of the bus, and that the collision was unavoidable on the part of appellant's driver. On the other hand, appellees contend that the truck driven by Oxner could be seen by the bus driver for a distance of 600 feet, and that it was obvious or should have been obvious to the bus driver that the truck was out of control; and, in the circumstances, the bus driver was negligent in not reducing the speed of the bus to such an extent that it could be stopped absolutely, if necessary, to avoid the collision.

We must view the evidence in the light most favorable to appellees, and when that is done, if there is any substantial evidence of negligence on the part of the bus driver, then the trial court did not err in letting the case go to the jury on the issue of liability on the part of appellant. When viewed in the light most favorable to the appellees it can be said that the evidence shows the bus driver saw that Oxner was on the wrong side of the road while they were a considerable distance apart; that the bus driver could see that the Oxner truck was traveling in an abnormal manner; that the bus driver realized this, and blew his horn and blinked his lights, and reduced his speed to 45 or 50 miles an hour, but applied his brakes no further; that Oxner was drunk and his

truck was out of control, and he cut across the highway in front of the bus; that the bus driver, although he had seen the truck weaving down the highway for a distance of some 200 yards, had not taken the necessary precautions to avoid a collision; that the bus, while traveling at about 55 miles an hour, hit the truck broadside; that the bus, after hitting the truck, traveled 123 feet, pushing the truck sideways; that the truck wheels, while being pushed sideways by the bus, dug a trench about 4 inches deep in the ground; that there were no skid marks indicating there was any attempt to stop the bus; that if a person were alert and anticipating that a stop might be necessary, the bus could have been stopped in 43 feet if it were making not more than 40 miles an hour. When all of the evidence is viewed in the most favorable light to the appellees, it cannot be said that there is no evidence to the effect that the bus driver was negligent in failing to observe that the truck was out of control, or in failing to act accordingly and reduce the speed of the bus to the point where it could be stopped absolutely to avoid the collision.

Appellant says the court erred in giving appellees' requested Instruction No. 2:

"You are instructed that in the exercise of the care required by the operator of the bus of the defendant Missouri Pacific Transportation Company, when such operator sees danger ahead or it is reasonably apparent if he is keeping a proper lookout, or if he is warned of approaching imminent danger, then the duty is imposed upon him and a reasonable control of the bus requires that he immediately bring his bus under such control as to be able to check the speed or stop it absolutely if necessary in the threatened emergency.

"Therefore, if you find from the evidence in this case that the driver of defendant Missouri Pacific Transportation Company's bus at the time of the alleged collision was aware of or had been advised of impending danger and negligently failed to bring his bus under such control as to be able to check its speed or stop it absolutely, if necessary, after such danger came within his

line of vision then in that event he would be guilty of negligence and if such negligence, if any, proximately caused the injuries to the plaintiff, V. W. Miller, then your verdict in this case will be for the plaintiffs, V. W. Miller and Mrs. V. W. Miller.''

It is contended that the first part of the instruction is erroneous because it states that in the face of imminent peril the bus driver is required to bring the vehicle under such control that it can be stopped absolutely to avoid the threatened danger. This is a correct statement of the law. In *Lockhart* v. *Ross,* 191 Ark. 743, 87 S. W. 2d 73, the court approved an instruction which contained the following language: ''And it is the duty of such a driver to keep his automobile under such control as to be able to check the speed or stop it if necessary to avoid injury to others when danger is apparent.'' And, in *Craighead* v. *Missouri Pacific Transportation Company,* 195 F. 2d 652, the Circuit Court of Appeals for the Eighth Circuit said: ''But it does not offend against the rule announced in *Fort Smith Gas Company* v. *Cloud* (8th Cir., 75 F. 2d 413, 416, 97 A. L. R. 833) and *Coca Cola Bottling Co. of Blytheville* v. *Doud,* 189 Ark. 986, 76 S. W. 2d 87, 90, to require that when the driver of the motor vehicle sees danger ahead, or it is reasonably apparent if he is keeping a proper lookout, or if he is warned of approaching imminent danger, then the duty is imposed upon him and the reasonable control of the car requires that he immediately bring his automobile under such control as to be able to check the speed or stop it absolutely, if necessary, in the threatened emergency.'' Citing *Livingston* v. *Baker,* 202 Ark. 1097, 155 S. W. 2d 340. Appellant complains of the second part of the instruction, contending that it tells the jury that in certain circumstances the appellant would be negligent as a matter of law. However, it will be observed that the instruction states: ''Therefore, if you find from the evidence in this case that the driver of defendant Missouri Pacific Transportation Company's bus at the time of the alleged collision was aware of or had been advised of impending danger and negligently failed to bring his bus under such control, . . . '' **The**

instruction was approved, practically *verbatim*, in *Livingston* v. *Baker, supra.*

Appellant argues that the court erred in giving appellees' Instruction No. 5, which tells the jury that, in determining whether the bus driver was negligent, the question of whether he violated the law with reference to speed could be taken into consideration. This instruction was justified by the evidence.

It is also maintained by appellant that there is no competent medical testimony showing that Mr. Miller's disability is the result of the collision. Miller was riding on one of the front seats of the bus; there was a metal railing in front of him. The evidence shows that at the time of the collision the bus was traveling at a speed of somewhere between 45 and 60 miles an hour. It struck the Oxner truck broadside with such force that it pushed the truck in front of the bus sideways for a distance of 123 feet before the truck became disengaged from the bus. The wheels on the truck were in contact with the ground to such an extent that, although going sideways, they dug a trench about 4 inches deep. All of this goes to show that the impact of the bus striking the truck was terrific; Miller was thrown from his seat violently, and after the bus came to a stop he was on the floor, unable to move his lower extremities. His legs felt cool and numb and he could not get up; an ambulance took him to Marianna, then he was removed to the hospital in Memphis. He lost consciousness; he was paralyzed from his waist down and could not move his legs or body; he could not control his kidneys or his bowels and it was necessary to insert a catheter and colon tube.

Dr. Bland W. Cannon, of Memphis, qualified as an expert. He is a neuro-surgeon, having received training in neurology at Mayo's Clinic, and received his Master's Degree in neurological surgery at the University of Minnesota. He is a member of the Board of Neurology and a Fellow of the American Surgical College. Dr. Cannon testified that, in his opinion, Miller is unable to do physical work, and that this condition is permanent.

He further testified that Miller's condition is complicated by multiple sclerosis; that about 15% of the cases of multiple sclerosis are traced to trauma and in this instance the multiple sclerosis cannot be separated from the injury. He was asked:

"Q. In your opinion, is there a causal connection between this patient's accident and his present condition?

A. Yes, sir. I would like, for a second, to draw, to dovetail what I think about his present condition. I think he had an injury to the cord in his back and that he never completely recovered from that injury, because within the period we expected him to recover, as I told you, I expected him to get better and he didn't, he reached a plateau and then he went backwards. I would have to assume that the trauma he had was the initial cause of it and that the multiple sclerosis has now complicated the picture and is contributing to the trouble."

Dr. Louis P. Britt, of the Campbell Clinic, at Memphis, gave evidence to the effect that, in his opinion, Miller is permanently disabled and will never be able to carry on his former occupation. Dr. C. M. T. Kirkman, of Helena, also testified on behalf of appellee, V. W. Miller. The appellant produced no medical testimony.

The evidence is substantial to the effect that when Miller was thrown from his seat by the collision he received an injury to the spinal cord, from which his disability has developed, and that he is permanently and totally disabled.

The next point made by appellant is that the judgments are excessive. At the time of his injury, Miller had an expectancy of future life of 27 years; he was a lumber mill worker and earned $2,860 a year. According to the evidence, the total amount that Miller could be expected to earn in the future is $77,220. When that sum is reduced to its present value, it is materially decreased, and after adding to that reduced sum his expenses growing out of the injury, there remains a large portion of the verdict that must have been for pain and

suffering and mental anguish. Of course, it is hard to measure physical pain and mental anguish in dollars and cents; and there is no amount of money that would entirely relieve the pain and mental anguish which a person in Miller's condition must suffer. But, he should be relieved of such pain and mental anguish so far as money will do it. In the circumstances presented here, we believe that by allowing the present value of Miller's earning capacity for the 27 years of his future expectancy, plus his expenses growing out of the accident, and add to that sum a sufficient amount to make a total of $75,000, would be allowing an ample sum to compensate him for his physical pain and mental anguish insofar as money will serve that purpose.

As pointed out in *Southern National Insurance Co.* v. *Williams,* 224 Ark. 938, 277 S. W. 2d 487, "Precedents are of scant value in a case like this." In that case, a $95,000 verdict for the pecuniary loss to the family of Knabe, who was killed, was reduced to $75,000. He had a life expectancy of 33.44 years; he earned $8,000 a year, of which he contributed more than one half to the family. Here, Miller has an expectancy of only 27 years and an earning capacity of not quite $2,900 a year.

Mrs. Miller was awarded a $25,000 judgment for loss of consortium. We now come to a consideration of her case. Consortium has been defined as: "the comfort and the decent and proper enjoyment of the affection of her husband"; "comfort and society"; "society and service"; "conjugal society"; "the society of her husband"; "society and affection"; "the mass of indefinable duties and rights are conveniently gathered under the word consortium." Appellant stoutly asserts an action of this kind cannot be maintained by the wife, that it is not authorized by statute or the common law. Admittedly, we have no statute specifically giving the wife a cause of action for loss of consortium. If she has such a right, it must be found in the principles of the common law. In defining the common law, it is stated, in 11 Am. Jur. 154:

"It is the system of rules and declarations of principles from which our judicial ideas and legal definitions are derived. The common law is not a codification of exact or inflexible rules for human conduct, for the redress of injuries, or for protection against wrongs; on the contrary, it is the embodiment of broad and comprehensive unwritten principles, inspired by natural reason and an innate sense of justice, and adopted by common consent for the regulation and government of the affairs of men. Its development has been determined by the social needs of the community which it serves. In other words, the common law is the legal embodiment of practical sense. It is a comprehensive enumeration of principles sufficiently elastic to meet the social development of the people. Its guiding star has always been the rule of right and wrong, and in this country its principles demonstrate that there is in fact, as well as in theory, a remedy for all wrongs. The capacity of common law for growth and adaptation to new conditions is one of its most admirable features. It is constantly expanding and developing in keeping with advancing civilization and the new conditions and progress of society and adapting itself to the gradual change of trade, commerce, arts, inventions, and the needs of the country. Whenever an old rule is found unsuited to present conditions or unsound, it should be set aside and a rule declared which is in harmony with those conditions and meets the demands of justice."

As a result of his injuries, Miller was completely paralyzed for two weeks; however, he has recovered to some extent but has not regained the use of his legs, kidneys or stomach muscles, and he is not able to have sexual relations with his wife. Before he was injured, he attended church services and PTA meetings with his wife, also picnics and "singings," and he is not now able to do those things. He was the superintendent of a Sunday School, and his wife was a teacher in the School; he helped his wife with the children, of whom there are four — ages 21, 16, 11 and 8; he helped her cook, and made a garden. And now, about the only thing he is able to do is to look at TV. It appears that Mrs. Miller has

suffered the complete loss of consortium; Miller is not able to furnish any companionship; it does not appear that he has sufficient mental attainments that would enable him to be an enjoyable companion notwithstanding his present pain and mental anguish and his physical disabilities. Prior to Mr. Miller's injuries, Mrs. Miller led a happy life, enjoyed her husband, his companionship and marital relation. And now, instead of a mate with whom she can mutually enjoy life, she has a burden to bear by the loss of consortium. Undoubtedly, she has been damaged heavily. The question is: Does the law give her a remedy for the damage that she has suffered?

Prior to the case of *Hitaffer* v. *Argonne Company, Inc.*, 183 F. 2d 811 (1950), all the courts of this country and England, having occasion to pass on the question, held that the wife had no cause of action for the loss of consortium due to injuries to the husband. It does appear in *Hipp* v. *E. I. DuPont de Nemours & Co.*, 182 N. C. 9, 108 S. E. 318 (1921), in an action of this kind, the wife was allowed to recover, but, later, in *Hinnant* v. *Tide Water Power Co.*, 189 N. C. 120, 126 S. E. 307 (1925), the *Hipp* case was overruled. Another case that departed from the traditional rule, *Griffen* v. *Cincinnati Realty Company*, 27 Ohio Dec. 585, lost its force by the later case of *Smith* v. *Nicholas Building Company*, 93 Ohio St. 101, 112 N. E. 204. But the husband has the right of such a cause of action. *Bernhardt* v. *Perry*, 276 Mo. 612, 208 S. W. 462, 13 A. L. R. 1320.

In *Hitaffer* v. *Argonne Company, Inc., supra,* the court held outright that the wife can recover for the loss of consortium because of negligent injuries of the husband. There, the court said: "The modern rule is thus well stated by the Court of Appeals of New York: 'The actual injury to the wife from loss of *consortium,* which is the basis of the action, is the same as the actual injury to the husband from that cause. His right to the conjugal society of his wife is no greater than her right to the conjugal society of her husband. Marriage gives each the same rights in that regard. Each is en-

titled to the comfort, companionship, and affection of the other. The rights of the one and the obligations of the other spring from the marriage contract, are mutual in character, and attach to the husband as husband and to the wife as wife. Any interference with these rights, whether of the husband or of the wife, is a violation, not only of natural right, but also of a legal right arising out of the marriage relation. * * * As the wrongs of the wife are the same in principle, and are caused by acts of the same nature, as those of the husband, the remedy should be the same.' *Bennett* v. *Bennett,* 116 N. Y. 584, 590, 23 N. E. 17, 6 L. R. A. 553. * * *

"The underlying ground of the common-law rule of discrimination between husband and wife in respect of this right, namely, the incapacity of the wife to maintain a separate action for a tort, has been swept away by the modern legislation that has so generally relieved the wife of the ordinary disabilities of coverture."

*Bennett* v. *Bennett, supra,* was an enticement case. There is no doubt about the wife having a cause of action for loss of consortium, where a willful act gives rise to such action. Actually, there is no sound reason for allowing a recovery where the act complained of is willful and not allowing a recovery where the action is based on negligence.

Since the decision in the *Hitaffer* case, the rule therein announced has been rejected by several courts. *Jeune, et al.* v. *Del E. Webb Const. Co.,* 77 Ariz. 226, 269 P. 2d 723; *Franzen* v. *Zimmerman,* 127 Col. 381, 256 P. 2d 897; *Ripley, et al.* v. *Ewell,* (Fla.) 61 So. 2d 420; *La Eacse* v. *Cincinnati, Newport & Covington Ry.,* (Ky.) 249 S. W. 2d 534; *Coastal Tank Lines, Inc.* v. *Canoles,* 207 Md. 37, 113 A. 2d 82; *Danek* v. *Hommer,* 9 N. J. 56, 87 A. 2d 5; *Larocca* v. *American Chain & Cable Co.,* 23 N. J. Super. 195, 92 A. 2d 811; *Passalacqua* v. *Draper,* 279 App. Div. 660, 107 N. Y. S. 2d 812; *Lurie* v. *Mammone,* 107 N. Y. S. 2d 182; *Nelson* v. *A. M. Lockett & Co.,* 206 Okla. 334, 243 P. 2d 719; *Weng* v. *Schleiger,* 130 Col. 90, 273 P. 2d 356; *Garrett* v. *Reno Oil Co.,*

(Tex.) 271 S. W. 2d 764; *Nickel* v. *Hardware Mutual Casualty Co.,* 269 Wis. 647, 70 N. W. 2d 205; *Ash* v. *S. S. Mullen, Inc.,* 43 Wash. 2d 345, 261 P. 2d 118; *Werthan Bag Corp.* v. *Agnew,* 202 Fed. 2d 119; *Filice* v. *United States,* 217 Fed. 2d 515; *O'Neil* v. *United States,* 202 Fed. 2d 366; *Seymour* v. *Union News Co.,* 217 Fed. 2d 168; *Josewski* v. *Midland Constructors,* 117 Fed. Supp. 681.

But, on the other hand, the *Hitaffer* decision has been approved. In *Cooney* v. *Moomaw,* 109 Fed. Supp. 448 (1953), the right of the wife to recover for the loss of consortium as decided in the *Hitaffer* case was recognized and the language of that case was quoted extensively. In *Delta Chevrolet Company* v. *Waid,* 211 Miss. 256, 51 So. 2d 443 (1951), the court sustained a large judgment to the wife for the loss of her husband. The court used this language: "In fixing the amount of damages to be awarded, the jury was warranted in taking these matters into consideration, as well as the element of damages resulting from the loss of society and companionship, * * *" In *Gist* v. *French,* 136 Cal. App. 2d 247, 288 P. 2d 1003 (1955), the court said: "The parties to a marriage are each entitled to the comfort, companionship and affection of the other. Any interference with the right of either spouse to the enjoyment of the other is a violation of a natural right as well as a legal right arising from the marriage relation." Citing *Hitaffer* v. *Argonne Company, Inc., supra.*

*Acuff* v. *Schmit,* (Iowa) 78 N. W. 2d 480 (1956), was a suit by the wife for damages for loss of consortium due to defendant's negligent injury of her husband through the operation of an automobile. It is directly in point with the case at bar. The court discusses all angles of the question, including the history of the old rule that the wife could not recover for loss of consortium, and holds that the wife may now recover in an action of this kind, and this is also the holding in *Brown* v. *Georgia-Tennessee Coaches,* 88 Ga. App. 519, 77 S. E. 2d 24. The *Hitaffer* decision is cited with approval in both cases.

Both appellant and Mrs. Miller rely on the case of *Best* v. *Samuel Fox & Company*, as reported in the All England Law Reports, 1951, Volume 2. There, the *Hitaffer* case is cited, and Mrs. Best was denied the right of recovery, not because she could not recover for a total loss of consortium but because she could not recover for a partial loss of consortium as existed in that case. As we construe it, the *Best* case holds that for a total loss of consortium, as in the case at bar, the wife may recover.

In this country, for many years, experts in the law have criticised the old rule that the wife could not recover for the loss of consortium. Prosser, in his work on Torts published in 1941, at page 948, says:

"In spite of almost universal condemnation on the part of legal writers, there is little indication of any change in the rule. Obviously it can have no other justification than that of history, or the fear of an undue extension of liability of the defendant or a double recovery by wife and husband for the same damages. The loss of 'services' is an outworn fiction, and the wife's interest in the undisturbed relation with her consort is no less worthy of protection than that of the husband. Nor is any valid reason apparent for allowing her recovery for a direct interference by alienation of affections, and denying it for more indirect harm through personal injury to the husband, where no such distinction is made in his action. There remains of course the important fact that the husband is under the duty to support his wife, so that any compensation for loss of earning power paid to him goes indirectly to benefit her, while the wife is under no corresponding duty. This must necessarily be taken into account in any determination of her damages. But such elements of damage as her loss of the husband's society and affection, and in some cases even the expenses to which she has been put in caring for him, remain uncompensated."

See also discussion of the subject in Harvard Law Review, Volume XXXV, Page 343.

This court has not heretofore passed on the question, and the course we think is dictated by reason and justice is that the wife should be allowed to recover for loss of consortium caused by injuries to the husband. Mrs. Miller was awarded a judgment of $25,000. Again, this is something hard to measure in dollars and cents; but, even in this day and time $25,000 is a considerable amount of money, and we believe that a judgment for $15,000 would be more in line with the damage that Mrs. Miller has sustained.

The judgments are affirmed upon condition that remittiturs are entered as indicated, within seventeen (17) calendar days; otherwise the judgments will be reversed and the cause remanded for new trial.

Justice WARD concurs.

Justices HOLT and MILLWEE dissent in part.

Justice McFADDIN concurs in part and dissents in part.

J. SEABORN HOLT, J., dissenting in part. I dissent from that part of the judgment which allowed the wife to recover for the loss of consortium, for the very simple reason that I can find no Arkansas law that would allow it. While it may be, as the majority points out, that "reason and justice" dictate that we allow it, however, courts have nothing to do with the wisdom and expediency of statutes and if a law appears to operate harshly, the remedy lies with the Legislature and not with us. "Until the Legislature has seen fit to designate the redress which, under Article 2, Sec. 13 of the Constitution, it has a right to do, the judiciary should not transgress the coordinate boundary established by Article 4, Section 1 of the Constitution," *Lucas* v. *Bishop*, 224 Ark. 353, 273 S. W. 2d 397. This court has never had occasion to pass on this issue, however, in the recent *Lucas* case above, we had occasion to pass on the question of the father, Lucas, as next friend of his minor son, suing Bishop for allegedly alienating the child's home life and parental affections. In denying right to recover in the circumstances we there said: "The creation of a

right of action for a child's benefit to compensate for loss of the intangible elements set out in the complaint here is a subject that addresses itself to the State's policy forming department. Until the legislature has seen fit to designate the redress which, under Art. 2, § 13 of the Constitution, it has a right to do, the judiciary should not transgress the coordinate boundary established by Art. 4, § 1 of the Constitution. 'The power of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confined to a separate body of magistracy, to-wit: Those which are legislative to one; those which are executive to another, and those which are judicial to another; (and, Sec. 2) no person or collection of persons, being of one of these departments, shall exercise any power belonging to either of the others.'

"But we do hold that in the case at bar Lucas as next friend has not shown that financial compensation for the things complained of has been authorized by any law, and we are not persuaded that judicial empiricism is the answer."

The principle announced in the above case [*Lucas* v. *Bishop*] applies with equal force here. Diligence of counsel has pointed to but one case, *Werthan Bag Corp.* v. *Agnew*, 202 Fed. 2d 119, involving an accident which occurred near Forrest City, Arkansas, which resulted in injuries to the husband, and wherein the husband sued for his injuries and the wife sued for loss of consortium. The Circuit Court of Appeals for the Sixth Circuit rejected the wife's claim for loss of consortium, refused to follow the Hitaffer case [*Hitaffer* v. *Argonne Co., Inc.*, 183 F. 2d 811 (1950] strongly relied upon by the majority here, and dismissed her cause of action, and the court said: "None of these (Arkansas) cases, in our judgment, even intimates that a wife possesses the right to sue for damages for the loss of her husband's consortium resulting from an injury negligently inflicted upon him. ¶ Being bound as we think we are to look to the common law as declared by the state courts of our country, where the Arkansas courts have not spoken upon the subject,

we find the decisions, as heretofore indicated, to be overwhelmingly against the contention of appellant.'' Leading text books generally appear to be against recovery for loss of consortium on the part of the wife unless statutory authority therefor exists. In 27 Am. Jur., § 514, p. 114, it is said: ''Whatever right a wife may have, by virtue of statutes removing her common law disabilities, to recover for loss of consortium of her husband as a result of injuries inflicted by a third person, does not extend to loss of consortium caused by a mere negligent injury inflicted upon the husband. At least in the absence of any statute expressly conferring it, a wife, even though able to sue and be sued as a femme sole, has no right or cause of action, as a general rule, for loss of consortium due to injuries negligently inflicted on her husband. She has no such cause of action even under a statute preserving to her all rights of action growing out of violation of her personal rights. Her loss of consortium resulting from negligence is too remote and indirect to permit her to recover therefor, and hence, it is distinguishable from loss of consortium resulting directly from a wrongful act, as where her husband is wrongfully enticed, seduced or forced away from her. Furthermore, damages to which the husband is entitled, in a suit for his injuries sustained through another's negligence, are supposed to be full compensation for his injuries, in which compensation the wife has a benefit, with the consequence that if the wife is permitted a separate recovery for her loss of consortium resulting from such injuries, there is, in effect, a double recovery from the same matter.'' In 41 C. J. S., § 404, p. 900, we find this language: ''In the absence of statute, a wife has no cause of action for any loss sustained by her, including loss of consortium, in consequence of personal injuries inflicted on the husband.'' The same rule is set forth in *Restatement of Torts,* Vol. 3, § 695, p. 496: ''A married woman is not entitled to recover from one who, by his tortious conduct against her husband has become liable to him for illness or other bodily harm, for harm thereby caused to any of her marital interests or for any expense incurred in providing medical treatment for her husband.

"Comment: a. Although a husband is entitled to recover for the loss of his wife's services and society and any expense which he incurs as a result of illness or bodily harm caused to her by the tortious conduct of another, a wife is not entitled to a recovery under similar circumstances. The wife is not, nor has she ever been, entitled to the services of her husband. Moreover, she is not deprived of the support to which she is entitled by any tort committed against him. The husband is still legally bound to provide support for her, and the tortfeasor is liable to the husband for any loss of earning power which he may suffer. This the husband himself may recover, and were his wife permitted to recover for the loss of support, a double recovery would result. The wife has a similar interest in the society and sexual relations with her husband as he has in such relations with her. However, the law has not recognized her right to recover against one who has caused harm to such interests by conduct which is not intended to harm them. One who has negligently injured the husband, or has intentionally caused him harm, by conduct directed toward him personally rather than toward the wife's interest, is not liable to the wife. . . ."

It is conceded here that we have no statute in Arkansas allowing for such a recovery. It appears that the right of the wife to recover for the loss of consortium has been denied in at least 29 of our states and in England. It also appears that since the decision in the *Hitaffer case, supra,* in 1950 the common law courts in 13 of our states, 3 Federal courts and in England have been asked to review again the question in the light of that decision and with the exception of Georgia the doctrine in the Hitaffer case has been unanimously repudiated and the common law rule adhered to and reaffirmed. Accordingly, until our own legislature acts and provides for the wife to recover for the loss of consortium, I cannot go along with the majority opinion in this case.

Mr. Justice MILLWEE joins in this dissent.

Ed. F. McFaddin, Associate Justice, (concurring and dissenting). I agree with all of the majority opinion except that part which relates to the damages; and on the matter of damages I entertain these views:

I. *Consortium.* I cannot agree to Mrs. Miller's recovering for loss of consortium. We have no statute in Arkansas allowing for such a recovery. The majority concedes that it is proceeding under the judge-made law in the case of *Hitaffer* v. *Argonne Co.,* 183 F. 2d 811. Until the Legislature of Arkansas passes a statute allowing for consortium, then I cannot agree to the consortium portion of the majority opinion. Judge Holt has gone into the matter in detail in his dissent, and I concur in his conclusions.

II. *Excessiveness of Miller Verdict.* The majority has seen fit to reduce from $100,000.00 to $75,000.00 the jury verdict awarded Mr. Miller. I cannot say that the verdict is excessive. This Court should reduce a jury verdict only when the amount is so grossly excessive as to shock the conscience of the Court. When we take the testimony supporting Mr. Miller's recovery at its strongest probative force, I maintain that the award is not excessive. The majority says that Mr. Miller is totally and permanently disabled. He has 27 years of expectancy and could have earned in that period of time $77,200.00, even at his present earning capacity; and there is nothing to show that he could not have earned much more in the years to come. In addition to his earning capacity, he has had conscious pain and suffering of a tremendous amount. I quote this portion of the majority opinion:

"As a result of his injuries, Miller was completely paralyzed for two weeks; however he has recovered to some extent but has not regained the use of his legs, kidneys or stomach muscles, and he is not able to have sexual relations with his wife. Before he was injured, he attended church services and PTA meetings with his wife, also picnics and "singings," and he is not now able to do those things. He was the superintendent of a Sunday School, and his wife was a teacher in the School; he

helped his wife with the children, of whom there are four, ages 21, 16, 11 and 8; he helped her cook, and made a garden. And now, about the only thing he is able to do is to look at TV."

Medical experts testified that Mr. Miller's condition is permanent. In view of all of the foregoing, I certainly cannot say that the verdict to Mr. Miller for $100,000.00 was so grossly excessive as to shock the conscience. What young man with 27 years of expectancy would exchange for $100,000.00 a happy and useful life like Miller had in prospect for what Miller now has before him?

So to summarize: I would reverse and dismiss the judgment that Mrs. Miller recovered for consortium; and I would affirm the judgment in full for Mr. Miller.