Peter IGNERI and Theresa Igneri, Plaintiffs,

v.

CIE. DE TRANSPORTS OCEANIQUES, Defendant.

No. 62-C-92.

United States District Court E. D. New York.

June 11, 1962.

Di Costanzo, Klonsky & Sergi, Brooklyn, N. Y., for plaintiffs, Philip F. Di Costanzo, Brooklyn, N. Y., of counsel.

Dougherty, Ryan, Mahoney & Pellegrino, New York City, for defendant, Thomas J. Short, New York City, of counsel.

BARTELS, District Judge.

Motion by defendant to dismiss the second cause of action herein on the ground that it fails to state a claim upon which

relief may be granted.[1] The action is brought by plaintiff Theresa Igneri for $500,000 damages based upon the loss of consortium of her husband Peter, a longshoreman, who allegedly sustained permanent injury aboard defendant's vessel as a result of the unseaworthiness thereof and defendant's negligence.

Defendant argues that since this action is brought upon the civil side, New York law must control,[2] and that under that law no action lies on behalf of a wife against a tortfeasor for negligent invasion of her right of consortium. Kronenbitter v. Washburn Wire Co., 1958, 4 N.Y.2d 524, 176 N.Y.S.2d 354, 151 N.E. 2d 898. However, in an action of this nature it is not the law of the State of New York but general maritime law which controls. "In such cases the maritime tort is the real thing contested, and therefore such contest should be made under maritime rules, process, and law." New York & Long Branch Steamboat Co. v. Johnson, 3 Cir., 1912, 195 F. 740, 742. See also Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. The argument advanced by defendant for dismissal is consequently inapplicable.

But this conclusion is insufficient to dispose of the case because it remains for the Court to determine whether the second cause of action states a claim cognizable under general maritime law. As far as can be ascertained, this is a case of first impression requiring the Court to seek guidance from an examination of the principles underlying the right of the wife to recover for loss of consortium under the common law. Plaintiff contends that Hitaffer v. Argonne Co., 1950, 87 U.S.App.D.C. 57, 183 F.2d 811, 23 A. L.R.2d 1366, allowing such recovery, represents the modern and "progressive" view of the common law and should be followed by this Court.[3] That case, however, represents a departure from the clear weight of authority under the common law, and labelling it as "progressive" is not helpful unless the criteria used satisfies the scales of justice. No citation of authorities is necessary to support the statement that in early common law a wife was not regarded as competent to institute any action in her own right. The sole action then available for injuries to a married woman was the action instituted by her husband for trespass on the case *per quod consortium amisit*. In such a suit recovery was allowed the husband for loss of his wife's services and her society. No recovery was permitted in the wife's name.[4] As society became more enlightened, statutes were enacted in the various jurisdictions, generally described as "Married Women's Acts", which removed from married women many of their common law disabilities by granting to them the same rights as single women.[5] As a result of these statutes, the basis of a husband's claim for loss of consortium was in reality destroyed since the wife could now sue for her own injuries and was no longer deemed a chattel of her husband. Strange as it may seem, however, the right of the husband to bring an action in his own name for loss of services and society of his wife survived as an an-

1. Rule 12(b) (6), Fed.Rules Civ.Proc., 28 U.S.C.A.

2. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

3. Hitaffer has been followed in: Brown v. Georgia-Tennessee Coaches, Inc., 1953, 88 Ga.App. 519, 77 S.E.2d 24; Mo. Pac. Transp. Co. v. Miller, 1957, 227 Ark. 351, 299 S.W.2d 41; Acuff v. Schmit, 1956, 248 Iowa 272, 78 N.W.2d 480; Yonner v. Adams, Del.Super., 1961, 167 A.2d 717; Montgomery v. Stephan, 1961, 359 Mich. 33, 101 N.W.2d 227; Hoekstra v. Helgelad, 1959, 78 S.D. 82, 98 N.W.2d 669;

Dini v. Naiditch, 1960, 20 Ill.2d 406, 170 N.W.2d 881; Duffy v. Lipsman-Fulkerson & Co., D.C.Mont., 1961, 200 F.Supp. 71; see also Ore.Rev.Stat. § 108.010 (1955).

4. While this historical background has been questioned in 61 Col.L.Rev. 1341, it is relied upon in most decisions dealing with loss of consortium, whether allowing or denying recovery to the wife.

5. e. g., New York Domestic Relations Law, McKinney's Consol.Laws, c. 14, § 51 (derived from L.1835, c. 275).

achronism.[6] From the survival of this historical right of the husband's action for loss of the wife's consortium, it is argued that a wife should now be accorded an equal right to recover for loss of the husband's consortium. This argument of "equality" (which in fact is the *ratio decidendi* of Hitaffer) has not prevailed in almost four-fifths of the American jurisdictions.

Were the principle clear under common law that the wife is entitled to recover for the loss of her husband's consortium, it still would not follow that such recovery would be permitted under the law of admiralty, since the recovery is based upon the extension of a common law anachronism. In the area of maritime tort the Court has found only two cases which consider the question whether a suit by a husband for loss of his wife's services and society will lie in admiralty. In Savage v. New York, N. & H. S.S. Co., Limited, D.C.N.Y., aff'd per curiam on the opinion below, 2 Cir., 1911, 185 F. 778, Judge Hough stated in an *obiter dictum* "No instance of what is in substance an action per quod consortium amisit has been shown in admiralty." This statement was challenged by the Third Circuit in New York & Long Branch Steamboat Co. v. Johnson, supra, in which the Court affirmed a recovery by a husband for loss of his wife's consortium. In that case, however, the admiralty precedents cited to support the holding were wrongful death actions wherein the husband sought compensation for loss of his wife's *services*, which loss was his own personal and direct pecuniary injury.[7] In the case of the death of a married woman her husband's pecuniary loss is the value of the tangible services which she performed for him, as distinct from her society (which latter term contains "elements of companionship, love, felicity, and sexual relations").[8] In effect, these services, as distinguished from her society, are the counterpart of the financial support rendered by a husband to his wife.[9] This Court agrees with Judge Hough that there is no maritime precedent for a suit for loss of consortium by either spouse. But even if Johnson is considered a precedent, it is not an authority supporting a wife's right to sue, as hereafter discussed.

Turning to the question as a matter of principle, it is important to remember that the word "consortium", as used in American case law, embraces within its sphere two aspects, one, services, and the other, society.[10] In speaking of such services, reference is made to the wife's services to her husband, and not to services from a husband to his wife, because the reciprocal obligation of the husband is his financial support of the wife.[11] This is illustrated by the inclusion in a recovery for personal injuries to a husband of loss of wages, thus theoretically assuring the wife of this financial support from the

6. The right of the husband to bring such an action, however, has been abrogated in Virginia (Va.Code Ann. § 55–36 [1950]) and N. Carolina (Helmstetler v. Duke Power Co., 1945, 224 N.C. 821, 32 S.E.2d 611). In Kansas, the wife may recover directly the damages previously recoverable by the husband for loss of services (Kan.Gen.Stat. Ann. § 23–205 [1949]), thus eliminating his separate cause of action.

7. This measure of damages was arrived at by admiralty's adoption of the concept of Lord Campbell's Act. See Gerardo v. United States, D.C.Cal., 1951, 101 F.Supp. 383, 385.

8. Hitaffer v. Argonne Co., supra, 87 U.S. App.D.C. 57, 183 F.2d p. 813.

9. It should be noted that under both New York and Federal statutes no recovery is permitted in death actions for loss of society, and only pecuniary loss is recoverable. Cf. Legare v. United States, D.C. Fla., 1961, 195 F.Supp. 557, where recovery for loss of society was apparently predicated upon Florida Statutes Annotated § 768.01 and 768.02, F.S.A.

10. See Bennett v. Bennett, 1889, 116 N.Y. 584, 23 N.E. 17, 6 L.R.A. 553.

11. In fact, at common law, there was no legal duty upon the husband to perform any services for his wife. 3 Blackstone, Commentaries, *142–3.

husband. In a wife's suit for loss of consortium there would seem to remain therefore only the claim for loss of society. Additionally, a wife's recovery for loss of society would be a recovery without exposure to impact or apprehension thereof and a recovery for an alleged injury which admittedly is not direct and independent but only a derivative consequence of the husband's injury.

The Court has found no decision under maritime law which allows recovery for personal injuries without impact, and certainly no decisions which allow such recovery without even exposure to impact or apprehension. Not only is this claim derivative and indirect, but it presents troublesome problems and dilemmas with respect to damages. Since an award to the husband includes damages for his inability to provide consortium, there is a grave danger that the wife's action, representing the reverse side of the coin, would in fact be a duplication of part of the award to the husband. Further, the nature of the society of any particular spouse is difficult to establish by independent proof and almost impossible to evaluate by any definite yardstick. Not infrequently it is fictitious. While it is true that the risk of speculative damages and the risk of unreliable testimony is not sufficient to deny recovery to those who have actually suffered serious injury, it is another element to be weighed when recovery is sought in this most doubtful area.[12]

Aside from the logical considerations barring a wife's recovery for loss of society at common law, there are additional reasons why such recovery should not be permitted in admiralty. A seaman has always been treated as a "ward of admiralty" and, as such, has been granted certain unique protections which are non-existent under common law. One of these protections is the doctrine of unseaworthiness, which enables a seaman to recover against a non-negligent vessel owner or operator on a theory of liability without fault. With certain rare exceptions, recovery under such a theory is not permitted at common law. To also allow a wife to recover for loss of society under this theory of liability, is not only anomalous but represents an extension of the wife's right to recovery for loss of society even beyond the limits of liability of those common law authorities which permit such recovery. In addition, one cannot overlook the fact that under maritime concepts of comparative negligence, a recovery by a wife for loss of society could result in a recovery for an injury derived from her husband's injury for which he might have been primarily responsible;[13] this again would be in derogation of common law. Plaintiff's claim stems from an extension of an anachronism having its antecedents in terrene laws of status. Such antecedents have found no place in the law of the sea and should not now be introduced and extended therein. See Kermarec v. Compagnie Generale Transatlantique, 1959, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550.

One other observation concerning the Johnson case is in order. The court in Johnson relied upon authorities which permitted recovery by the husband for loss of services. If these authorities are not to be limited to death actions, but are deemed to support a claim by a husband for loss of services, they nevertheless would not justify a holding that a wife could recover for loss of her husband's society. As is indicated above, these claims fall into two different categories and consequently there is no basis for an

12. Four jurisdictions, while allowing a husband to recover for loss of services, bar recovery for loss of society. Lockwood v. Wilson H. Lee Co., 1946, 144 Conn. 155, 128 A.2d 330; Rogers v. Boynton, 1943, 315 Mass. 279, 52 N.E.2d 576, 151 A.L.R. 475; West v. City of San Diego, 1960, 54 Cal.2d 469, 6 Cal.Rptr. 289, 353 P.2d 929; Golden v. R. L. Greene Paper Co., 44 R.I. 231, 116 A. 579, 21 A.L.R. 1514.

13. Indeed, recovery may be had by a negligent seaman (longshoreman) against a vessel owner or operator who is without fault as that term is used at common law.

"equality of the sexes" argument to justify recovery by the wife. It remains to be said that even if Johnson is correct and a husband can sue in admiralty for loss of both his wife's services and society, this Court would be constrained, for the reasons heretofore stated, to reject the view of Hitaffer and accept the reasoning of Kronenbitter, and refuse to extend this principle to a recovery by a wife for loss of society. Bergamaschi v. Isthmian Lines, Inc., D.C., S.D.N.Y., Civ. 137–27 (June 8, 1959).

After carefully considering the arguments for and against allowing the second cause of action, the Court is compelled to conclude that under general maritime law the second cause of action of the complaint herein fails to state a claim upon which relief may be granted.

Settle order within ten (10) days on two (2) days' notice.